Adams County et al., Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare et al., Respondents.

Argued June 3, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, MACPHAIL and PALLADINO. Reargued February 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Theodore A. Adler,* with him *Ronald G. Lench* and *David W. Reager, Widoff, Reager, Selkowitz and Adler,* for petitioners.

*Robert B. Hoffman,* Deputy Attorney General, with him *Allen C. Warshaw,* Deputy Attorney Gen-

eral, *Mary Frances Grabowski,* Assistant Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondents.

OPINION BY JUDGE BLATT, August 11, 1982:

Pennsylvania's sixty-seven counties have brought this action, addressed to our original jurisdiction,[1] against the Department of Public Welfare (DPW) and its Secretary, Helen B. O'Bannon (collectively, respondents) requesting that the respondents be enjoined from reducing Commonwealth reimbursements to the petitioners for the fiscal year 1980 for child welfare services. The petitioners also challenge the constitutionality of certain "non-fiscal" provisions of the General Appropriations Act of 1980, Act of June 18, 1980, P.L. 1391 (Act 17-A). The parties have filed cross motions for summary judgment which are presently before us for disposition.

The controversy here is centered upon the reimbursement requirement set forth in Section 704.1 of the Public Welfare Code (Code), Act of June 13, 1967, P.L. 31, *as amended,* added by Section 2 of the Act of July 9, 1976, P.L. 846, 62 P.S. §704.1, (Act 148), which provides in pertinent part that:

> The department shall reimburse county institution districts or their successors for expenditures incurred by them in the performance of their obligation pursuant to this act and the act of December 6, 1972 (P.L. 1464, No. 333), known as the "Juvenile Act," in the following percentages : .... (Footnote omitted.)

The petitioners argue that this reimbursement requirement created no monetary ceiling for the fiscal year in question, 1980, and that the DPW was conse-

---

[1] Section 761(a)(1) of the Judicial Code, 42 Pa. C. S. §761 (a)(1).

quently required to reimburse the counties for all expenditures incurred pursuant to the individual county plans which had been submitted and approved by the DPW for that calendar year. It is admitted that the counties did receive full reimbursements through June 30, 1980, which ended the Commonwealth's 1979 fiscal year, but the appropriation of $88,245,000 for the fiscal year 1980, beginning July 1, 1980, was insufficient to meet the expenditures of $114,000,000 projected for it by the county plans, and that Secretary O'Bannon notified the counties on July 11, 1980 that state funding for the remainder of the 1980 calendar year would be adjusted on a pro rata basis. It is also admitted that state reimbursements for the fiscal year 1980 were ultimately reduced by 34% of projected county plan requirements.[2]

The petitioners instituted the instant action on September 10, 1980, and their application for preliminary injunction requesting that the respondents be enjoined from implementing any funding reductions was denied by Judge MacPhail of this Court on October 30, 1980. No appeal was taken from that order, and a transcript of the hearing conducted on the application for preliminary injunction has been made a part of the record for purposes of considering the motions for summary judgment presently before us. In considering these motions we are mindful that summary judgment may be entered only where no issue of material fact exists and where the moving party is entitled to judgment as a matter of law. *Washington v. Cuyler*, 48 Pa. Commonwealth Ct. 409, 409 A.2d 974 (1980).

To the petitioners' argument that Act 148 and the DPW's regulations set forth no limit for reimburse-

---

[2] A supplemental appropriation of $4,000,000, reduced from $28,000,000 by Governor Thornburgh's line item veto, was enacted on December 19, 1980. Section 2 of the Act of December 19, 1980, P.L. 1321.

ments to counties for the costs that they incur in providing child welfare services and that the DPW therefore erred in not tendering such full reimbursement, the DPW replies that such payments were limited by language in Act 17-A and Section 5-10K-27 of the DPW's regulations, 7 Pa. B. 4053 (1977), which prohibited the expenditure of funds for child welfare services exceeding those which were appropriated and that, under the Pennsylvania Constitution, Pa. Const. art. III, §24, reimbursement for child welfare services may not exceed the amount appropriated for that purpose by the legislature.

As to Act 148, the General Assembly ordered therein that the DPW "shall reimburse" the counties for child welfare services, and we must conclude that the legislature's use of the term "shall" indicates that the DPW's obligation to make reimbursements was mandatory, not merely directory. *City of Philadelphia v. Shapp*, 44 Pa. Commonwealth Ct. 303, 403 A.2d 1043 (1979) . Furthermore, Act 148 requires the DPW to reimburse counties:

> No less than seventy-five percent and no more than ninety percent of the reasonable cost . . . of child welfare services . . . and such services approved by the department, including but not limited to, foster home care, group home care, shelter care, community residential care, youth service bureaus, day treatment centers and service to children in their own home and any other alternative treatment programs approved by the department.

62 P.S. §704.1(a)(2). Our reading of the statute reveals no ceiling imposed on these reimbursements (other than the specific percentage figures noted). The legislation confers a right to reimbursement upon the petitioners and imposes a duty on the DPW not only to reimburse the counties but to reimburse them

for *at least* whatever the range of the percentages specified *based upon the petitioners' reasonable costs for providing the child welfare services as approved by the DPW.*

We cannot accept the DPW's argument that the provisions of Act 17-A limited its duty under Act 148 to reimburse the petitioners to the amount of funds which were specifically appropriated. Act 17-A provided in pertinent part that "[r]eimbursement for child welfare services . . . shall not exceed the amount of State funds appropriated." Such language, when appended as it was to an appropriations bill, was clearly unconstitutional under Article III, Section 11 of the Pennsylvania Constitution, Pa. Const. art. III, §11, which requires that a "general appropriations bill *shall embrace nothing but appropriations* for the executive, legislative and judicial departments of the Commonwealth. . . ." (Emphasis added.) In *Biles v. Department of Public Welfare,* 44 Pa. Commonwealth Ct. 274, 403 A.2d 1341 (1979), this Court adopted a three-part test to determine when language in a general appropriation bill violates our Constitution: 1) the language must be germane to the appropriation; 2) it must not conflict with existing law; and 3) the effect of the language must not extend beyond the life of the appropriation bill. The disputed language in Act 17-A is germane to the appropriation and does not extend beyond the life of the bill, but it was an attempt to amend the substantive provisions of Act 148, and was, therefore, in conflict with existing law and consequently unconstitutional.

Act 148 endowed the petitioners with a right to reimbursement for a percentage of their total reasonable costs, and where as here the counties submitted child welfare plans which were approved by the DPW, they then had a right to rely on such approval in establishing their programs. *See Philadelphia County Inter-*

*mediate Unit, No. 26 v. Department of Education,* 60 Pa. Commonwealth Ct. 546, 432 A.2d 1121 (1981). We acknowledge, of course, that the legislature has full authority to limit the petitioners' rights to reimbursement, but we must conclude that, when such rights are established by statute, the legislature may not substantively amend that statute by inserting limitational language in general appropriations bills, as was done here.[3] *See Association of Pennsylvania State College and University Faculties v. Kline,* 58 Pa. Commonwealth Ct. 164, 169 n. 6, 427 A.2d 684, 687 n. 6 (1981), *aff'd,* 496 Pa. 315, 436 A.2d 1386 (1981). We must therefore conclude that Act 17-A did not alleviate the DPW's duty to provide reimbursement to the petitioners.[4]

Similarly, we do not believe that Article III, Section 24 of the Pennsylvania Constitution, Pa. Const. art. III, §24, which provides that "[n]o money shall be paid out of the treasury, except on appropriations made by law . . ." relieves the DPW of its legal obligation under Act 148 even though this constitutional restraint does limit the remedy which is available to the petitioners here and others in like situations. Our Supreme Court has set forth the restrictions upon the executive branch in its implementation of legislatively mandated programs:

---

[3] Subsequent to the time in question, the legislature amended Act 148 to specify that the petitioners had no right to reimbursement for the cost of child welfare services beyond the amount of the appropriation therefor.

[4] Although deference is to be given to an agency's regulations interpreting the statute under which it operates, *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517 (1977), Act 148 imposes an affirmative duty on the DPW to provide adequate reimbursement and we do not believe that the DPW can abrogate its responsibility to request such funding by promulgating regulation 5-10K-27, 7 Pa. B. 4053 (1977) purporting to limit the petitioners' rights to reimbursement to available funds.

It is fundamental within Pennsylvania's tripartite system that the General Assembly enacts the legislation establishing those programs which the state provides for its citizens and appropriates the funds necessary for their operation. The executive branch implements the legislation by administering the programs. . . . It must do so within the requirements and restrictions of the relevant legislation, and within the amount appropriated by the legislature. The executive branch may not of its own initiative use funds appropriated for one program in carrying out another and may not spend on a program more than its designated amount. It is in this way that the doctrine of separation of powers functions. (Citation omitted.)

*Shapp v. Sloan,* 480 Pa. 449, 468-69, 391 A.2d 595, 604 (1978). It is obvious that the DPW may not expend money which the legislature has not appropriated nor may this Court cross over the barriers imposed by the doctrine of separation of powers to order the General Assembly to enact such an appropriation. We may, however, review the DPW's actions here to determine whether or not there was an abuse of discretion, and we believe that there was. At the time the DPW submitted its budget request for child welfare services to the legislature, it had already reveiwed and approved the petitioners' proposed programs and the costs thereof. Nevertheless, it requested a total budget appropriation in an amount which was far below what it knew that the counties would require. Such conduct clearly violated the DPW's obligations under Act 148. And, while it is true that the executive branch has broad discretion in developing the budget to be presented to the legislature, Act 148 imposed a responsibility upon the DPW to review and approve the counties' plans and this responsibility carried with it a

duty to make a good faith effort to provide the petitioners with the statutorily mandated reimbursement. Once the DPW had exercised its discretion in determining and approving the reasonable costs of the proposed child welfare services, it had a ministerial duty to request a sufficient appropriation from the legislature to cover those costs.

The DPW argued, of course, that it notified the respective legislative committees that the requested funds would not meet the anticipated expenses. We do not believe, however, that such notice effectively fulfilled the DPW's statutorily imposed duty or the implicit requirement contained therein that it petition the General Assembly for the necessary monies. We will therefore order that the DPW submit to the legislature a request for a supplemental appropriation sufficient to reimburse the petitioners for the costs of child welfare services to which they are entitled under Act 148.

We will grant the petitioners' motion for summary judgment and deny summary judgment to the respondents.

## Order

And Now, this 11th day of August, 1982, it is ordered that the motion for summary judgment of the petitioners in the above-captioned matter is hereby granted and the respondents are directed to submit a request for supplemental appropriation from the General Assembly in an amount and manner consistent with the foregoing opinion and

It is further ordered that the motion for summary judgment of the respondents in this case is hereby denied.

Judge Mencer did not participate in the decision in this case.

DISSENTING OPINION BY JUDGE MACPHAIL:

I respectfully dissent. While I sympathize with the position of the Petitioners who were deprived of a reasonable expectation of funds for the implementation of their child welfare programs, I believe the resolution of their problem lies with the legislature, not the Respondents.

The issues are succinctly stated in the majority opinion.

I cannot agree that Act 148 gave to the counties and the Department of Public Welfare a blank check as Petitioners contend and as the majority opinion holds. There are two reasons why, in my opinion, this cannot be the law. First, the Constitution of Pennsylvania provides in Article III, Section 24 that "[n]o money shall be paid out of the Treasury, except on appropriations made by law and on warrant issued by the proper officers; . . . ." In the instant case, the legislature appropriated 88 million dollars to fund the county programs. The Department of Public Welfare could not spend money it did not have. In the second place, our Supreme Court has clearly stated that the executive branch must administer legislative programs "within the requirements and restrictions of the relevant legislation, *and within the amount appropriated by the legislature. The executive branch . . . may not spend on a program more than its designated amount.*" *Shapp v. Sloan,* 480 Pa. 449, 468-69, 391 A.2d 595, 604 (1978), *appeal dismissed sub nom. Thornburgh v. Casey,* 440 U.S. 942 (1979) (emphasis added). That principle of law, in my opinion, must be applied to the facts of the case now before us.

Neither do I find the language in Act 17-A constitutionally offensive. Rather, I believe the legislature, perhaps because of past experience, was merely stating existing law, to wit, an executive agency cannot

spend money that is not appropriated by the legislature.

Finally, I must observe that Petitioners have requested this Court to enjoin the Respondents from reducing reimbursements for the fiscal year 1980 for child welfare services. The majority opinion grants summary judgment to the Petitioners but also directs the Respondents to request a supplemental appropriation from the General Assembly, a remedy *not* sought by the Petitioners. While such additional relief may be a practical response to a complicated problem, I doubt that it is appropriate in the procedural posture of the instant case. Moreover, it occurs to me that if the Department of Public Welfare follows the order of this Court and the legislature refuses to appropriate the necessary funds, Petitioners may have won the battle but lost the war; at the very least, additional litigation will ensue.

Because I do not believe that the facts of this case are sufficient to justify legal action against the two named Respondents, I would grant summary judgment in their favor.

Judge ROGERS joins in this dissent.

———

CONCURRING OPINION BY JUDGE DOYLE:

I wholeheartedly concur in the result reached by the Court in this matter. I do not, however, believe the language of Act 17-A to be unconstitutional under Article III, Section II and existing law. The limiting language utilized by the Legislature merely reiterates existing law as provided by the Constitution of Pennsylvania itself in Article III, Section 24. It is that language upon which the focus of the Court's opinion should lie and I fully agree with the articulation of the majority as to why the limitations of Article III, Section 24, fail to excuse the DPW from its legal obligation to provide for the reimbursement of programs

as mandated by Act 148. Thus, while I appreciate and agree with the opinion expressed by the Dissent that the DPW can expend no more than is appropriated by the Legislature in any given fiscal year, that fact does not excuse the DPW from seeking the necessary funding, either in a deficiency or supplemental appropriation for the fiscal year 1980 or in subsequent years' budgets.