463 A.2d 1002

**ADAMS COUNTY, et al.**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, et al., Appellants.**

Supreme Court of Pennsylvania.

Argued May 25, 1983.

Decided July 1, 1983.

48

LeRoy S. Zimmerman, Atty. Gen., Robert B. Hoffman, Allen C. Warshaw, Deputy Attys. Gen., for appellants.

Theodore A. Adler, Camp Hill, for appellees.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, McDERMOTT and ZAPPALA, JJ.

## OPINION OF THE COURT

ROBERTS, Chief Justice.

This is an appeal from a final decree of the Commonwealth Court which, on cross-motions for summary judgment, directed appellants, the Department of Public Welfare (DPW) and its Secretary, to submit a request to the General Assembly for an appropriation of State funds to supplement appropriations of $88.245 million and $4 million made during fiscal year 1980 to DPW for child welfare programs. The amount which the Commonwealth Court directed DPW to request is the difference between the amount of funds actually appropriated and a percentage of appellees' estimated costs of projected child welfare programs for calendar year 1980.

The Commonwealth Court concluded that, pursuant to section 704.1 of the Public Welfare Code, appellees were entitled to be paid a percentage of their estimated costs for calendar year 1980. We conclude that the plain language of section 704.1 required DPW to reimburse appellees for a percentage of expenditures actually made for child welfare programs, but did not obligate DPW to pay appellees a percentage of their estimated costs. As appellees have sought to recover $114 million in estimated costs for calendar year 1980, and have not claimed that the $92.245 million appropriated was insufficient to permit DPW to reimburse them for their actual expenditures, which on this record clearly were less than the expenditures which had been estimated, we vacate the decree of the Commonwealth Court and remand with the direction that judgment be entered in favor of appellants.

I

Section 704.1 was added to the Public Welfare Code, Act of June 13, 1967, P.L. 31, § 101 et seq., as amended, 62 P.S. § 101 et seq. (1968 and Supp.1983), by section 2 of the Act of July 9, 1976, P.L. 846, 62 P.S. § 704.1 (Supp.1983), to be effective as of January 1, 1978, see Act of July 9, 1976, supra, § 6. Subsection (a) of that section provides that DPW shall "reimburse [counties] for expenditures incurred by them in the performance of their obligation pursuant to this act [ (Public Welfare Code) ] and the act of December 6, 1972 (P.L. 1464, No. 333), known as the 'Juvenile Act,' " in specified percentages of "cost," "actual cost" and "reasonable cost," depending upon the type of service provided.[1] Section 704.1(f) directs DPW to "prescribe the time at, and the form on which [counties] shall submit to [DPW] annual estimates of who will be served and the cost of such service

1. The specified percentages and types of services include:

"(1) Eighty percent of the cost of an adoption subsidy paid pursuant to subdivision (e) of Article VII of this act.

(2) No less than seventy-five percent and no more than ninety percent of the reasonable cost including staff costs of child welfare services, informal adjustment services provided pursuant to section 8 of the . . . 'Juvenile Act,' and such services approved by the department, including but not limited to, foster home care, group home care, shelter care, community residential care, youth service bureaus, day treatment centers and service to children in their own home and any other alternative treatment programs approved by the department.

(3) Sixty percent of the reasonable administrative costs approved by the department except for those staff costs included in clause (2) of this section as necessary for the provision of child welfare services.

(4) Fifty percent of the actual cost of care and support of a child placed by a county child welfare agency or a child committed by a court pursuant to the . . . 'Juvenile Act' to the legal custody of a public or private agency approved or operated by the department other than those services described in clause (2). * * *

(5) Fifty percent of the reasonable cost of medical and other examinations and treatment of a child ordered by the court pursuant to the . . . 'Juvenile Act,' and the expenses of the appointment of a guardian pendente lite, summons, warrants, notices, subpoenas, travel expenses of witnesses, transportation of the child, and other like expenses incurred in proceedings under the . . . 'Juvenile Act.' "

Public Welfare Code, § 704.1(a), 62 P.S. § 704.1(a) (Supp.1983).

under each category of service set forth in subsection (a)."
DPW is further directed, "within forty-five days of each
calendar quarter, [to] pay fifty percent of [DPW's] share of
the [county's] estimated expenditures for that quarter."
§ 704.1(g).

For fiscal year 1977, the General Assembly appropriated
$70 million to DPW "[f]or payment to counties for child
welfare programs . . . ," General Appropriations Act of 1977
(Act 11–A), Act of August 20, 1977, P.L. 411, 433, more than
double the appropriation of $32.689 million for the previous
fiscal year, see General Appropriations Act of 1976 (Act
7–A), Act of June 4, 1976, P.L. 1331, 1349.[2] DPW adopted

2.  Prior to the enactment of section 704.1, State participation in the
    funding of child welfare programs provided by counties was gov-
    erned by sections 704 and 705 of the Public Welfare Code, 62 P.S.
    §§ 704 & 705 (1968). Under these sections, DPW was to compute an
    annual grant in accordance with a formula to be established by DPW
    "[u]pon approval of an annual plan and the estimated expenditures
    for a child welfare program" submitted by a county, § 705(b), and to
    make a grant "in an amount up to one-half of the total of all . . .
    approved expenditures . . . ," § 704(a). Grants were expressly made
    subject to the availability of appropriations. § 704(b).

    Section 704(a) of the Public Welfare Code was amended in 1972 to
    increase the ceiling on grants from one-half of approved estimated
    expenditures to sixty percent of such expenditures. Act of Decem-
    ber 6, 1972, P.L. 1434, § 1. In 1976, section 704(a) was further
    amended, retroactive to July 1, 1975, to place the ceiling on grants at
    seventy-five percent of approved estimated expenditures for fiscal
    year 1974, and at ninety percent for fiscal year 1975 and thereafter.
    Act of July 9, 1976, P.L. 911, § 1.

    Prior to the 1972 amendment to section 704, the Legislature appro-
    priated $31.988 million for fiscal year 1972 to DPW "[f]or payment to
    counties for child welfare programs." General Appropriations Act of
    1972 (Act 17–A), Act of June 7, 1972, P.L. 1849, 1868. Prior to the
    1976 amendment to section 704, the following sums were appropriat-
    ed by general appropriations acts:

|  |  |
|---|---|
| Fiscal Year 1973 | $34.547 million |
| (Act of July 12, 1973 (Act 11–A), P.L. 489, 509) | |
| Fiscal Year 1974 | $39.109 million |
| (Act of June 26, 1974 (Act 21–A), P.L. 1371, 1393) | |
| Fiscal Year 1975 | $46.039 million |
| (Act of June 30, 1975 (Act 8–A), P.L. 650, 684) | |

implementing regulations in December 1977, to take effect on January 1, 1978, the effective date of section 704.1. See 7 Pa.Bull. 4037 (12/31/77). The regulations required counties to submit "service plans and budget estimates" for a calendar year by November 15 of the preceding year. § 5–10A–7, 7 Pa.Bull. at 4047. In setting forth "allowable costs for reimbursement," the regulations expressly stated that reimbursement was subject to "the availability of funds to the Department from the General Assembly." § 5–10K–27, 7 Pa.Bull. at 4053. For fiscal year 1978, the Legislature appropriated $70 million, General Appropriations Act of 1978 (Act 16–A), Act of May 31, 1978, P.L. 1485, 1507, and for fiscal year 1979, appropriated $75 million, General Appropriations Act of 1979 (Act 9–A), Act of July 4, 1979, P.L. 626, 646.

## II

Appellees submitted their proposed service plans and budget estimates for calendar year 1980 by November of 1979, as required by DPW regulation. DPW approved the plans and cost estimates, and began to make advance payments to appellees in accordance with section 704.1(g).

In June of 1980, for fiscal year 1980, the Legislature appropriated $88.245 million to DPW for purposes of reimbursement to counties, $13.245 million more than the sum appropriated for the previous fiscal year. A proviso to the 1980 General Appropriations Act added:

"Reimbursement for child welfare services made pursuant to section 704.1 of the act of June 13, 1967 (P.L. 31, No. 21), known as the 'Public Welfare Code' shall not exceed the amount of State funds appropriated."

General Appropriations Act of 1980 (Act 17–A), Act of June 18, 1980, P.L. 1391, 1409. Also included in the General Appropriations Act of 1980 was an additional appropriation

The sum appropriated for fiscal year 1975 was $7.2 million less than the $53.239 million sum that had been included in the appropriations bill for that year. See 1975 P.L. at 664–65. The Governor approved $46.039 million of the $53.239 million appropriation.

of $26.2 million to DPW "[f]or payment to counties for child welfare programs." This appropriation supplemented the General Appropriations Act of 1979 for that fiscal year. 1980 P.L. at 1429.[3]

By letter dated July 7, 1980, the Secretary of DPW advised appellees of DPW's decision to allocate the funds appropriated for fiscal year 1980 on a pro-rata basis for the remainder of calendar year 1980 and for the first half of calendar year 1981. The present action was commenced on September 10, 1980, when appellees filed a petition for review, in which appellees sought a mandatory injunction directing appellants to "release to [appellees] reimbursements that have been unlawfully withheld." Appellees also applied for a preliminary injunction, which, on October 30, 1980, after a hearing, was denied (MacPhail, J.).

On December 19, 1980, while appellees' petition for review was pending, the Governor approved that portion of a bill adding to the Public Welfare Code a new section, section 709, which provides that DPW "shall not approve for reimbursement [county service] plans in the aggregate whose costs are in excess of the amount appropriated by the General Assembly." § 709(c), 62 P.S. § 709(c) (Supp.1983).[4]

3. For fiscal year 1981, the Legislature appropriated $100.5 million to DPW for payment of child welfare programs, nearly $8 million more than had been appropriated for the previous fiscal year, see General Appropriations Act of 1981 (Act 5–A), Act of July 1, 1981, P.L. 628, 643; for fiscal year 1982, the Legislature appropriated $104.467 million, General Appropriations Act of 1982 (Act 2–A), Act of May 11, 1982 (Printer's No. 1896 at 27). Both acts contained the directive that reimbursement "shall not exceed the amount of State funds appropriated," the same directive which was contained in the General Appropriations Act of 1980. Neither act contained a supplemental appropriation to DPW for payment for child welfare programs for fiscal year 1980.

4. Section 709 provides:
"(a) Reimbursement for child welfare services made pursuant to section 704.1 shall not exceed the State funds appropriated each fiscal year.
(b) Commencing no later than July 1, 1981, the county institution districts or their successors shall be reimbursed in accordance with their fiscal year plans as approved by the department.

The bill included a supplemental appropriation of $28 million for fiscal year 1980 to DPW, "for payment to counties for child welfare programs." Act of December 19, 1980, P.L. 1321, § 2. The Governor approved $4 million of the $28 million appropriation, but disapproved the remaining $24 million.[5]

> (c) The department shall, by regulation, define allowable costs for authorized child welfare services and shall not approve for reimbursement plans in the aggregate whose costs are in excess of the amount appropriated by the General Assembly. Legislative oversight shall be required in the form of an annual report to the Legislature from the department indicating, but not limited to, showing the amounts paid to each county for each fiscal year, the source of funds, the timeliness of payments and the extent to which funds were not available to meet allowable and authorized costs."

This section took effect immediately. Act of December 19, 1980, P.L. 1321, § 3. Under current DPW regulations, which reflect revisions made in light of section 709, county plans and budget estimates are to cover a year coinciding with the Commonwealth's fiscal year, July 1 to June 30. See 55 Pa.Code § 3140.13.

5. In approving $4 million of the $28 million appropriation, the Governor stated:

> "The shortfalls in child welfare funding are simply not as severe as they may first have appeared. The difference between the State funds already provided for the current fiscal year and the level requested by counties represents only 11% of the total expenditures on child welfare services. In fact, in many counties, more State funds are available for child welfare services this year than were available during 1979. In these cases, counties have had to choose between continuing existing programs and starting new ones in order to remain within the available State funds.
>
>     \*     \*     \*     \*     \*     \*
>
> "[I]t has become evident that additional Federal funds are available for child welfare services in Pennsylvania. This week, Congress appropriated $6 million in additional funds which will be available to Pennsylvania under the Adoption Assistance and Child Welfare Reform Act for in-home services to children and youth.
>
>     \*     \*     \*     \*     \*     \*
>
> "I have instructed the Secretary of Public Welfare to release $3 million of Federal funds provided under Title IVD of the Social Security Act for child support services. These funds are currently not being used in counties which have been [sic] the maximum Federally reimbursable investment in child support activities. Once these funds are released, counties may use them to increase programmatic support for child welfare services.
>
>     \*     \*     \*     \*     \*     \*
>
> "I have instructed appropriate agencies in my administration to determine the maximum amount available for retention in this

Appellees filed a motion for summary judgment on March 13, 1981, and appellants filed a cross-motion for summary judgment the next day. After hearing argument and reargument, the Commonwealth Court en banc (Blatt, J.) entered its decree granting summary judgment in favor of appellees. Judge MacPhail, who had denied appellees' request for a preliminary injunction, filed a dissenting opinion, joined by Judge Rogers.

## III

■ Contrary to the assertion of appellees, it is clear that the express terms of section 704.1 obligated DPW to reimburse appellees only for a percentage of monies actually spent on child welfare programs. Section 704.1(f) contemplates the submission by counties of "annual estimates of who will be served and the cost of such service under each category of service set forth in subsection (a)." These estimates form the basis for advance payments by DPW under section 704.1(g), which requires DPW to pay fifty percent of its share of the county's "estimated expenditures for [a calendar] quarter," within forty-five days of that quarter. Those expenditures, however, under the plain language of subsection (a), ultimately must be "incurred" in order to obligate DPW to reimburse at the specified percentages of "cost," "actual cost" and "reasonable cost," depending upon the service provided. Because appellees' request for mandatory relief was based solely upon a claim of entitlement to funding at the level of estimated costs, mandatory relief should have been denied.

■ In entering the decree, the majority of the Commonwealth Court determined that DPW had breached a "ministerial duty" by requesting an appropriation for fiscal year 1980 which was insufficient to cover the "reasonable costs of the proposed child welfare services" as approved by DPW.

appropriation without jeopardizing our overall fiscal picture. They have advised me that this amount is $4 million."
1980 P.L. at 1322–23.

68 Pa.Cmwlth. 249, 256, 448 A.2d 1202, 1206. According to the Commonwealth Court,

> "[a]t the time the DPW submitted its budget request for child welfare services to the legislature, it had already reviewed and approved [appellees'] proposed programs and the costs thereof. Nevertheless, it requested a total budget appropriation in an amount which was far below what it knew that the counties would require."

Id.

In charging DPW with having requested an appropriation from the Legislature "which was far below what [DPW] knew that the counties would require," the Commonwealth Court assigned far too much significance to the role of DPW in the budgetary process and none whatsoever to the Governor, who has the greatest role. Under the Administrative Code, Act of April 9, 1929, P.L. 177, § 1 et seq., as amended, 71 P.S. § 51 et seq. (1962 and Supp.1983), DPW's participation in the budget process for fiscal year 1980 was confined to the submission of a budget estimate to the Secretary of the Budget by November 1, 1979, two weeks before appellees' service plans and cost estimates were even due, much less "approved." § 610(a), 71 P.S. § 230(a). By January 1, 1980, it was the obligation of the Secretary of the Budget to have submitted DPW's budget request to the Governor, who was authorized, "after giving to each department, board or commission an opportunity to be heard, [to] approve, disapprove or alter" the budget request. § 610(b), 71 P.S. § 230(b). By "not later than the first full week in February [of 1981]," the Governor was obliged to have supplied the General Assembly with his budget, including a requested appropriation to DPW for child welfare payments to counties. See § 613, 71 P.S. § 233. In light of the foregoing provisions of the Administrative Code, the record does not support the Commonwealth Court's conclusion that DPW failed to seek an appropriation commensurate with the needs of appellees as set forth in their proposed plans.

Because appellees have neither claimed nor established that their actual expenditures have not been properly reim-

bursed, it must be concluded that the Commonwealth Court erred in entering judgment in appellees' favor and against DPW.[6]

## IV

In their petition for review, appellees sought not only a mandatory injunction but also a declaration that the proviso to the General Appropriations Act of 1980 which limited reimbursement to the "amount of State funds appropriated" violated article III, § 11 of the Pennsylvania Constitution. That section provides:

> "The general appropriations bill shall embrace nothing but appropriations for the executive, legislative and judicial departments of the Commonwealth, for the public debt and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject."

See generally *Commonwealth ex rel. Greene v. Gregg,* 161 Pa. 582, 29 A. 297 (1894). Although the Commonwealth Court's decree did not formally rule on appellees' request for declaratory relief, the accompanying majority opinion expressed agreement with appellees' contention that the proviso effected an amendment to section 704.1 of the Public Welfare Code, and thus was unconstitutional under the "three-part test" to determine the validity of a general appropriations bill set forth in *Biles v. Department of Public Welfare,* 44 Pa.Cmwlth. 274, 403 A.2d 1341 (1979).

■ Appellees' contention is based on the erroneous premise that section 704.1 required DPW to pay appellees State funds in accordance with appellees' cost estimates, the same erroneous premise which formed the basis for appellees'

---

**6.** The Governor was not made a party to these proceedings. In any event, there is no basis for concluding that the Governor was under a "ministerial" duty, as appellees assert, to request an appropriation from the General Assembly in an amount sufficient to fund appellees' proposed service plans. See Brief for Appellees at 7. Rather, the Governor's constitutional duty was to submit a "balanced operating budget." Pa. Const. art. VIII, § 2. See also Pa. Const. art. IV, § 16, and *Commonwealth v. Barnett,* 199 Pa. 161, 48 A. 976 (1901) (Governor may disapprove any portion of amount contained in appropriations bill).

request for mandatory relief. Indeed, with or without the proviso, DPW would have been prohibited from reimbursing counties in an amount in excess of the amount appropriated by the Legislature for that purpose. The Pennsylvania Constitution provides: "No money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officials . . . ." Pa. Const. art. III, § 24. Under the Constitution, "[t]he legislature in appropriating is supreme within the limits of the revenue and moneys at its disposal." *Commonwealth ex rel. Schnader v. Liveright*, 308 Pa. 35, 67, 161 A. 697, 707 (1932).

As this record plainly provides no basis for either the mandatory or the declaratory relief sought by appellees, the decree of the Commonwealth Court must be set aside and judgment directed in favor of appellants.

Decree vacated and record remanded for the entry of judgment consistent with this opinion.

NIX and HUTCHINSON, JJ., did not participate in the consideration or decision of this case.