565 A.2d 1241

**MERCER COUNTY HOME AND HOSPITAL, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 18, 1989.

Decided Nov. 9, 1989.

---

Gerald Gornish, with him, Jeffrey B. Schwartz, of counsel, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, for petitioner.

Bruce G. Baron, Asst. Counsel, for respondent.

Before DOYLE and McGINLEY, JJ., and BARBIERI, Senior Judge.

McGINLEY, Judge.

Mercer County Home and Hospital (Mercer) has applied, under Pa.R.A.P. 1532(b), for summary relief in favor of its petition for review of the decision of the Pennsylvania Department of Public Welfare (DPW). Pa.R.A.P. 1532(b) allows the Court to enter judgment on an application for summary relief if the right of the applicant thereto is clear.

Mercer seeks review of an order of the Secretary of Public Welfare which denied reimbursement of costs under Pennsylvania's Medical Assistance Program, Section 443.1 of the Public Welfare Code,[1] for the period October 1, 1980 through December 31, 1980. The sole issue is whether, under Section 201 of the General Appropriation Act of 1980,[2] DPW should use Mercer's interim rate or its final audited rate to calculate the amount of reimbursement due.

This Court in *Franklin County Nursing Home v. Department of Public Welfare*, 126 Pa.Commonwealth Ct. 375, 559 A.2d 1002 (1989), McGinley, J. dissenting, held that Section 201 requires DPW to reimburse the final audited rate. Because the issue presented here is identical to the issue raised in *Franklin*, we must reverse DPW.

Mercer is a provider of skilled nursing facility (SNF) and intermediate care facility services under the Pennsylvania

1. Act of June 13, 1967, P.L. 31, *as amended*, added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. § 443.1.
2. Act of June 30, 1980, P.L. 1391.

Medical Assistance Program. Mercer receives interim payments throughout the fiscal year based upon the latest annual adjusted reported costs and approved budgets. At the end of the fiscal year, Mercer's account is audited and an appropriate adjustment made for over or under payments. Prior to 1980, this adjustment had been subject to a statewide ceiling. Section 201 of the General Appropriation Act of 1980 replaced the statewide ceiling with a system whereby separate ceilings were calculated for the various nursing homes within each of Pennsylvania's five Standard Metropolitan Statistical Areas (SMSAs).

By a letter dated June 30, 1982, DPW, through the Auditor General, issued an audit report showing that Mercer's SNF per diem operating costs were $46.22 before the application of any ceilings. Nonetheless, the audit report determined that Mercer's rates for the period October 1, 1980 through December 31, 1980 were capped by the new SMSA ceiling and thus limited to $39.24 per day. The net effect was a loss to Mercer in the amount of $103,632.06.

Mercer appealed from DPW's 1980 audit report and, on December 24, 1984, a DPW hearing officer issued an adjudication recommending that Mercer's appeal be denied. However, on January 25, 1985, the director of the Office of Hearings and Appeals (OHA) rejected the recommendation of the hearing officer and ordered that Mercer be reimbursed on the basis of its final audited rates in effect as of September 30, 1980. In its order, OHA noted that it had decided the same issue in the appeal of Franklin County Nursing Home.

Contending that OHA incorrectly followed its decision in *Franklin*, DPW sought reconsideration by the Secretary of Public Welfare. On March 18, 1988, the Secretary entered an order noting that the issue was identical to that raised in *Franklin* and reversed the decision of OHA. The within petition for review was filed from that order.

This Court granted Mercer an extension to file its brief until thirty days after our disposition of *Franklin*. On

June 6, 1989, this Court, en banc, held that Franklin County Nursing Home was entitled to reimbursement based upon its final audited rates in effect as of September 30, 1980. On July 5, 1989, Mercer filed the application for summary relief which is presently before this Court.

Although DPW previously conceded that the issues were identical DPW now argues that, due to additional facts of record presented in this case, our decision herein cannot be governed by the ruling in *Franklin*. Because we find that the issue presented herein is identical to the issue decided in *Franklin*, we grant Mercer's application for summary relief.

DPW's first contention is that the hearing officer herein found facts to support DPW's position in the legislative history for Section 201 and based upon the amount of funds appropriated to cover any losses incurred thereby. DPW's argument is unconvincing. The hearing officer's findings indicate that, although an early draft of Section 201 referred to grandfathering based upon interim rates, the word "interim" was deleted from later drafts.[3] Moreover, the word "interim" does not appear in the official enactment of Section 201.[4] This deletion clearly reflects a legislative intent to grandfather final audited rates rather than interim rates.

With regard to the amount of funds appropriated, DPW argues that the appropriation of funds sufficient only to cover the grandfathering of interim rates indicates a legislative intent to grandfather interim rates instead of final

**3.** The hearing officer states, in Findings of Fact Nos. 22 and 23, that:
    22. On February 21, 1980 the larger county homes sent their legislators an initial draft of a legislative proposal to change the system which provided for "grandfathering" based on interim rates.
    23. On February 26, 1980, the larger homes sent a second draft in which the word "interim" was deleted.
Adjudication of Hearing Officer Edgar M. Silvis, December 24, 1984, at 3.

**4.** Section 201 states in relevant part that, "The new ceilings shall provide that no public nursing home shall have a ceiling below its rate that was in effect prior to implementation of the new ceilings."

audited rates. However, because insufficient appropriations are not uncommon, the amount of the appropriation does not necessarily reveal legislative intent.

DPW further asserts that Article III, Section 24 of the the Pennsylvania Constitution and the Supreme Court's decision in *Adams County v. Department of Public Welfare*, 502 Pa. 47, 463 A.2d 1002 (1983), preclude the payment of funds which are not authorized by appropriation. In the present case, as in *Adams County*, the General Assembly appropriated funds to DPW with the understanding that the total amount to be appropriated would not be ascertained until some future fiscal year. The Supreme Court vacated this Court's order in *Adams County*, not because of insufficient appropriations but because Adams County sought reimbursement for estimated costs rather than actual expenditures. Because Mercer's final costs have been audited and are for a fixed amount, the holding in *Adams County* does not control.

DPW also claims that the "no loss" clause of Section 201 [5] conflicts with the three-part test previously set forth in *Biles v. Department of Public Welfare*, 44 Pa.Commonwealth Ct. 274, 403 A.2d 1341 (1979), for determining whether an appropriations bill complies with the anti-rider provision of Article III, Section 11 of the Pennsylvania Constitution. We addressed this issue in *Franklin* and are controlled by the ruling therein that the "no loss" clause meets all three requirements of *Biles*.

DPW next contends that Section 1921(c) of the Statutory Construction Act of 1972 [6] requires this Court to defer to DPW's construction of Section 201. However, Section 1921(c) lists administrative interpretations of a statute as only one of several factors which may be considered in ascertaining legislative intent. Section 1921(c) also lists the consequences of a particular interpretation as a factor to be considered. As we stated in *Franklin*, if we were to interpret Section 201, like DPW suggests, to mandate that

5. *See* Footnote 4.
6. 1 Pa.C.S. § 1921(c).

the ceilings be calculated based on interim rates, the result would be inconsistent with the express "no loss" clause.

DPW's last contention is that, as of the date on which DPW was required to implement Section 201, the only rates in existence and available for use were the interim rates. However, Section 201 expressly states that the new ceilings are to be calculated effective January 1, 1981 and paid retroactively. Furthermore, as noted above, the General Assembly can appropriate funds with the understanding that the full amount to be appropriated will be determined in the future.

For the foregoing reasons, DPW has not sufficiently distinguished this case from *Franklin* to warrant a different result. Because the issues are identical and there are no relevant factual distinctions, Mercer's right to relief is clear and summary relief is appropriate under Pa.R.A.P. 1532(b). Accordingly, we reverse the decision of the Secretary of Public Welfare.

## ORDER

AND NOW, this 9th day of November, 1989, the order of the Secretary of Public Welfare in the above-captioned matter is hereby reversed.