561 A.2d 1342

**MORRIS MANOR, INC., Wallingford Enterprises, Inc., Petitioners,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 9, 1989.

Decided Aug. 10, 1989.

484

Christine M. Kane, Newtown, for petitioners.

Bruce G. Baron, Asst. Counsel, Harrisburg, for respondent.

Before BARRY and PALLADINO (P.), JJ., and NARICK, Senior Judge.

## OPINION

BARRY, Judge.

This is an appeal from an order of the Director of the Office of Hearings and Appeals of the Department of Public Welfare (DPW) denying certain appeals from audit findings. Petitioners, Morris Manor, Inc., and Wallingford Enterprises, Inc., are providers of skilled and intermediate nursing care. The DPW disallowed certain costs claimed by petitioners as reimbursable under the Medical Assistance program. Two issues are presented for our review, the first of which involves only Wallingford.

■ Wallingford obtained a loan for capital improvements in 1978 and then later obtained a second loan at a higher rate of interest which it used to refinance the first

loan. DPW used the prime rate of interest at the time of the first loan in calculating the reimbursable interest expense for the audit periods in question. This action was taken pursuant to Section IV(D)(10)(a) of the DPW Cost Manual (Manual) which, for the audit periods in question, read:

10. Interest allowance.

a. Necessary and proper interest on both current and capital indebtedness is an allowable cost. However, there will be an upper limit on capital interest of 3 points above the prime interest rate at the time funds are borrowed.

8 Pa.B. 2836 (1978). Wallingford argues that DPW should have used the prime interest rate at the time the second loan was obtained in computing the allowable interest expense. DPW decided that the phrase "at the time the funds are borrowed" refers to the time the first loan was obtained since the second loan was used to refinance the first.

We have already construed the language of this section of the Manual in *Wallingford Enterprises v. Department of Public Welfare,* 101 Pa. Commonwealth Ct. 610, 516 A.2d 1300 (1986), a case, again, involving Wallingford and the first of its loans. Wallingford's 1978 loan was a variable rate mortgage and in a subsequent year the bank's prime rate and the rate of the mortgage had increased. DPW used the prime rate for 1978 in calculating the interest expense, even though the rates had increased, and disallowed the interest for the period in question above the 1978 prime rate plus three. Wallingford argued that all of its interest for the period in question should be allowed since the original rate on the loan was within the prime plus three limitation for that year.

In *Wallingford* we cited *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980), in which the Pennsylvania Supreme Court set the standard for reviewing an administrative agency's interpretation of its own regulation. First, the administrative interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation. Second, the regulation must be con-

sistent with the statute under which it is promulgated. As in *Wallingford*, we cannot say as a matter of law that DPW's interpretation is plainly erroneous or inconsistent with the regulation. If a provider chooses to refinance a debt at a higher interest rate, for whatever reason, the DPW has determined that this higher interest rate should not be passed on to the taxpayer. The regulation does not state that each refinancing establishes a new prime rate to be used. Instead, it says that capital indebtedness is an allowable cost with an upper limit of three points above the interest rate at the time the funds are borrowed. If a provider incurs a debt for some capital improvement and then refinances such debt, we see no error in viewing this as the same capital indebtedness. The time the funds are borrowed is when this capital indebtedness is first incurred.

■ The second issue concerns the sale of the two providers, Morris Manor, Inc. and Wallingford Enterprises, Inc. Normally, providers are reimbursed for the depreciation on their facilities. In 1982, the year both facilities were sold at a profit, DPW reimbursed the providers for only 10 percent of their depreciation. This action was purportedly based on Manual section IV(D)(9)(e), which reads:

9. Depreciation allowance.

Depreciation on capital assets ... is an allowable cost subject to the following conditions:

. . . .

e. Gains and losses realized from the disposal of depreciable assets, not to exceed 10% of the allowable depreciation for the year, are an allowable cost.

8 Pa.B. 2836 (1978). DPW interprets this section to mean that where a gain is realized from the sale of a depreciable asset, reimbursement will be limited to 10 percent of the total allowable depreciation for the year of the sale. DPW also admits, however, that the language of this section is ambiguous and that DPW has applied the regulation inconsistently in the past.

Petitioners argue that DPW should have reimbursed petitioners for all of the depreciation normally allowable. We agree. Upon reviewing section IV(D)(9)(e) we find it to be incomprehensible. Subsection (e) is supposed to express a limitation on allowable depreciation but it does not do so. DPW may very well have intended to draft the language to limit the allowable depreciation when a facility is sold at a profit, but the language in effect in 1982 did not accomplish this purpose.[1] We will not allow DPW to "invent" a meaning for language in lieu of drafting coherent regulations. When viewing all of IV(D)(9), we find that DPW's interpretation comes under the plainly erroneous standard of *Forbes Health System* since DPW is imposing a limitation which is not expressed in that section.

DPW argues that its interpretation should be upheld because it is consistent with the federal government's policy of recapturing depreciation as expressed in the Medicare Provider Reimbursement Manual (HIM–15). DPW's regulations provide that HIM–15 will be followed except that, where HIM–15 and the Manual differ, the Manual controls. The response to this argument is that the Manual provides a complete framework for computing depreciation reimbursement and the Manual therefore controls in this area. To refer to HIM–15 would be error where the Manual and HIM–15 differ as to the computation of depreciation expense.

Based on the above discussion, we affirm the Office of Hearings & Appeals with respect to the interest disallowed on the Wallingford loan, and reverse with respect to the depreciation expense disallowed for the year in which Morris Manor, Inc. and Wallingford Enterprises, Inc. were sold.

## ORDER

NOW, August 10, 1989, the order of the Director of the Office of Hearings & Appeals of the Department of Public

1. We note that DPW's current regulations provide for the offset of depreciation expense in the year a gain is realized on the sale of an asset. 55 Pa.Code § 1181.259(1).

Welfare, dated July 18, 1986, is affirmed with respect to the interest disallowed on the Wallingford loan, and reversed with respect to the depreciation expense disallowed for the year in which Morris Manor, Inc. and Wallingford Enterprises, Inc. were sold. The matter is remanded for a recalculation of reimbursable expenses in conformance with the accompanying opinion.

Jurisdiction relinquished.