739 A.2d 110

Yesenia MARRERO, Arlene Marrero, Richard Mojica and Christian Mojica, minors by their parent and Guardian Yollie TABALAS, et al., Appellants at No. 32,

Philadelphia Federation of Teachers Local 3 AFT AFL–CIO, by and through its President and Guardian Ad Litem Ted Kirsch, Intervenor, Appellants at No. 31,

v.

COMMONWEALTH of Pennsylvania; General Assembly of the Commonwealth of Pennsylvania, et al., Appellees.

Supreme Court of Pennsylvania.

Submitted Dec. 3, 1998.

Decided Oct. 1, 1999.

Ralph J. Teti, Deborah R, Willig, Philadelphia, for PFT & Kirsch, Intervenors.

Patrick M. Northern, Sheryl L. Auerbach, Lynn R. Rauch, Philadelphia, for Philadelphia School District.

Stephanie L. Franklin-Suber, Richard Feder, Sarah E. Ricks, Philadelphia, for City of Philadelphia & Mayor Rendell.

Michael Churchill, Thomas K. Gihool, Philadelphia, for Marrero, Mojica, Tabales, Nolas, et el.

Edward F. Mannino, William G. Frey, Philadelphia, for Com. et al.

John P. Krill, Jr., Linda J. Shorey, Jacqueline Jackson-DeGarcia, Harrisburg, for General Assembly.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

These are appeals from Commonwealth Court's sustenance of appellees' preliminary objections and consequent dismissal, with prejudice, of appellants' petition for review in the nature of a complaint for declaratory judgment. Appellants, the City of Philadelphia, the School District of Philadelphia, Aspira, Inc., the Philadelphia branch of the NAACP, and students and parents in the school district, claimed, in substance, that the General Assembly violated the Pennsylvania Constitution by failing to provide adequate funding for the Philadelphia School District in violation of Article III, section 14 of the constitution which obligates the General Assembly to "provide for the maintenance and support of a thorough and efficient system of public education."

Appellants sought a judgment declaring the Commonwealth and the General Assembly to be in violation of the state constitution and thus amenable to judicial mandate to achieve compliance by the appropriation of funds for the Philadelphia

public schools. Appellees filed preliminary objections claiming, inter alia, that appellants' claims were nonjusticiable under the doctrine of separation of powers and the political question doctrine. The court sustained the preliminary objections and dismissed appellants' petition for review. It held that the claims therein were indeed nonjusticiable and "it would be impossible to resolve the claims without making an initial policy determination of a kind which is clearly of legislative, and not judicial, discretion," as the resolution of the claims has been committed solely to the discretion of the General Assembly under Article III, section 14 of the Pennsylvania Constitution. We have jurisdiction of this appeal under 42 Pa.C.S. § 723(a).

The sole issue is whether Commonwealth Court committed a variety of errors in dismissing appellants' claims due to nonjusticiability. Appellants argue, in essence, that Commonwealth Court erred: (1) in holding that the separation of powers doctrine prohibits the judicial branch from deciding appellants' claims; (2) in holding that the Pennsylvania Constitution commits determinations regarding a thorough and efficient system of public education exclusively to the General Assembly; (3) in holding that appellants' claims do not present judicially manageable standards in determining that the action was barred by the political question doctrine; and (4) in interpreting the substance of appellants' petition for review by mistakenly viewing the petition as one seeking judicial legislation, when, in reality, appellants were merely seeking a judicial declaration of rights. The commonwealth court meticulously analyzed the precedents of this court which justify its decision, and we will therefore affirm the judgment of the court below.

Appellants argue that the General Assembly has failed to perform a mandatory constitutional duty—to provide a thorough and efficient system of public education—and that Commonwealth Court erred in failing to rule on the meaning of the constitutional provision, for it is axiomatic that the judiciary is the final authority on interpretation of the constitution.

In analyzing this contention, Commonwealth Court quoted from our decision in *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698, 706 (1977) (citation omitted):

Ordinarily, the exercise of the judiciary's power to review the constitutionality of legislative action does not offend the principle of separation of powers. There may be certain powers which our Constitution confers upon the legislative branch, however, which are not subject to judicial review. A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a nonjusticiable "political question."

The *Sweeney* court went on to state the following standards articulated by the United States Supreme Court in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):

Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker*, 369 U.S. at 217, 82 S.Ct. at 710, quoted in *Sweeney*, 375 A.2d at 706.

In applying these standards, Commonwealth Court relied on *Danson v. Casey*, 484 Pa. 415, 399 A.2d 360 (1979). The court correctly understood *Danson's* interpretation of the constitution's mandate that the legislature provide for a thorough and efficient system of public education "not [to] confer an individual right upon each student to a particular level or quality of education, but, instead, [to] impose a constitutional duty upon the *legislature* to provide for the maintenance of a thorough and efficient *system* of public schools throughout the Com-

monwealth." *Marrero by Tabales v. Com.,* 709 A.2d 956, 961–62 (Pa.Cmwlth.1998)(emphasis in original). Continuing to quote *Danson,* the court explained its rationale in the following terms:

The Constitution "makes it impossible for a legislature to set up an educational policy which future legislatures cannot change" because "the very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances." It would be no less contrary to the "essence" of the Constitutional provision for this Court to bind future Legislatures and school boards to a present judicial view of a constitutionally required "normal" program of educational services. It is only through free experimentation that the best possible educational services can be achieved.

Even were this Court to attempt to define the specific components of a "thorough and efficient education" in a manner which would foresee the needs of the future, the only judicially manageable standard this court could adopt would be the rigid rule that each pupil must receive the same dollar expenditures.... [H]owever, ... expenditures are not the exclusive yardstick of educational quality, or even of educational quantity.... The educational product is dependent upon many factors, including the wisdom of the expenditures as well as the efficiency and economy with which available resources are utilized.

. . . .

As long as the legislative scheme for financing public education "has a reasonable relation" to "[providing] for the maintenance and support of a thorough and efficient system of public schools," *Teachers' Tenure Act Cases* [329 Pa. 213] at 224, 197 A. [344] at 352, the General Assembly has fulfilled its constitutional duty to the public school students of Philadelphia. The Legislature has enacted a financing scheme reasonably related to [the] maintenance and support of a system of public education in the Commonwealth of Pennsylvania. The framework is neutral with regard to the School District of Philadelphia and provides it with its fair

share of state subsidy funds. This statutory scheme does not " '*clearly, palpably,* and *plainly* violate the Constitution' " . . . .

. . . .

Whatever the source of the School District of Philadelphia's endemic ability to obtain the funds the School District deems are necessary for it to offer its students a "normal program of educational services," appellants by this litigation seek to shift the burden of supplying those revenues from local sources to the Commonwealth. This Court, . however, may not abrogate or intrude upon the lawfully enacted scheme by which public education is funded, not only in Philadelphia, but throughout the Commonwealth.

709 A.2d at 964–65, quoting *Danson v. Casey*, 399 A.2d at 366– 67.

Commonwealth Court concluded that the relief requested by appellants—including declarations that the Commonwealth has failed to fulfill its obligations to provide an adequate system of public schools in Philadelphia, and that the General Assembly must amend the present legislation or enact new legislation to insure that funding for the School District of Philadelphia provides adequately for the greater educational needs of its students—cannot be granted because the matter is nonjusticiable.

Citing *Baker* and *Sweeney, supra,* the court reasoned that "prominent on the surface of this case is a 'textually demonstrable constitutional commitment of the issue to a coordinate political department,' i.e., the General Assembly." It also noted "a lack of judicially manageable standards for resolving the instant claims, and it would be impossible to resolve the claims without making an initial policy determination of a kind which is clearly of legislative, and not judicial, discretion." It summarized its conclusion by stating that "we are precluded from addressing the merits of the claims underlying the instant action as the resolution of those issues [has] been solely committed to the discretion of the General Assembly

under Article 3, Section 14 of the Pennsylvania Constitution." *Marrero,* 709 A.2d at 966.

The court held that the "General Assembly has satisfied [the constitutional mandate to provide 'a thorough and efficient *system* of public education] by enacting a number of statutes relating to the operation and funding of the public school system in both the Commonwealth and, in particular, in the City of Philadelphia.' " 709 A.2d at 965.

> Thus, this court will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education, nor any matters relating to legislative determinations of school policy or the scope of educational activity. In short, as the Supreme Court was unable to judicially define what constitutes a "normal program of educational services" in *Danson,* this court is likewise unable to judicially define what constitutes an "adequate" education or what funds are "adequate" to support such a program. These are matters which are exclusively within the purview of the General Assembly's powers, and they are not subject to intervention by the judicial branch of our government.

709 A.2d at 965–66 (citation omitted).

The foregoing summary of the rationale of Commonwealth Court discloses no error, but rather a conscientious adherence to precedent which forecloses the relief sought by appellants. The judgment of Commonwealth Court will be affirmed.

Judgment affirmed.

Justices ZAPPALA, CAPPY and NIGRO concur in the result.