The CITY AND COUNTY OF PHILADELPHIA on behalf of the PHILADELPHIA DEPARTMENT OF HUMAN SERVICES, Petitioner

v.

DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 11, 2007.

Decided Jan. 30, 2008.

Shelley R. Smith and Raegen T. Smith, Philadelphia, for petitioner.

Daniel Fellin, Asst. Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The City and County of Philadelphia, Department of Human Services (DHS) appeal an order of the Secretary of the Department of Public Welfare (Department) dismissing DHS's request for an administrative hearing.[1] DHS sought a hearing on the Department's tentative allocation of the Governor's proposed budget for children and youth services. Agreeing with the Department that the matter of a Secretary's recommendation to the Governor or the Governor's recommendation to the legislature is not a proper subject for a

---

1. This case was reassigned to the authoring judge on October 9, 2007.

formal administrative hearing, we will affirm.

The background to this case is as follows: In August 2005, DHS submitted a budget request to the Department of $711,994,489 to fund DHS's child welfare services during fiscal year 2006–2007. On October 31, 2005, DHS increased its request to $712,038,655. On February 28, 2006, the Department notified DHS that the Governor had submitted his proposed budget to the General Assembly for fiscal year 2006–2007. The letter explained that if the Governor's proposed budget for the Office of Children, Youth and Families were enacted, it would include an allocation to DHS of $695,001,552, which was $17,037,103 less than DHS had requested. The February 28, 2006, letter stated as follows:

> *The tentative allocations in the summary are based on the proposed budget* presented to the General Assembly on February 8, 2006 and are the same as the certified expenditures and revenues conveyed in my February 8, 2006 e-mail communication to the County Children and Youth Directors. Any changes to the Governor's proposed budget that the General Assembly makes as it enacts the final State Budget may require adjustments to these allocations. *Once the General Assembly has enacted the final State Budget, we will promptly notify you in writing of your final allocations for* [fiscal year] *2006–2007.*

Reproduced Record at 304a (R.R. at ——) (emphasis added).

On March 28, 2006, DHS filed an appeal, seeking to challenge its tentative allocation of the budget recommended to the General Assembly by the Governor. The Bureau of Hearings and Appeals (BHA) issued a rule to DHS, directing it to show cause why DHS's appeal should not be dismissed for lack of jurisdiction in light of the fact that a budget had not yet been enacted by the legislature. DHS and the Department each filed a response and, on May 16, 2006, the Administrative Law Judge (ALJ) dismissed DHS's appeal, finding the matter not ripe for consideration.[2] The ALJ reasoned that DHS had a right to a hearing only on its final allocation, as explained in the Department's letter of February 28, 2006. DHS requested reconsideration, and it was granted by the Secretary on June 15, 2006.

In the meantime, the General Assembly enacted the General Appropriations Act for fiscal year 2006–2007, which the Governor signed on July 2, 2006. On July 28, 2006, the Department informed DHS of its final allocation of the 2006–2007 budget enacted for the Office of Children, Youth and Families. The letter advised DHS that it could appeal the final allocation, and DHS did so. Its appeal is still pending before the BHA.

On September 1, 2006, the Secretary issued an order that affirmed the ALJ's dismissal of DHS's appeal of its tentative allocation of the Governor's proposed budget. Thereafter, DHS filed a petition for review with this Court.

---

**2.** The ripeness doctrine prevents the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies. *Estate of Merriam v. Philadelphia Historical Commission,* 777 A.2d 1212, 1219 (Pa. Cmwlth.2001). In determining whether a matter is ripe for review, consideration should be given to whether the issues are adequately developed for review and what hardship the parties will suffer if review is delayed. *Rouse & Associates—Ship Road Land Ltd. Partnership v. Pennsylvania Environmental Quality Board,* 164 Pa.Cmwlth. 326, 642 A.2d 642, 645 (1994).

On appeal, DHS raises one issue.[3] It contends that it has a right to challenge its tentative allocation of the budget for the Office of Children, Youth and Families that the Governor proposes to the General Assembly. DHS argues that if it is required to wait until the General Assembly enacts a budget, its challenge will be meaningless because the amount of an appropriation is non-justiciable. In response, the Department contends that neither the Public Welfare Code nor the Department's implementing regulation authorize a hearing on a tentative allocation of a budget still in the proposal stages. The Department maintains that a county may, however, challenge its final budget allocation after the general appropriations act has been enacted and signed into law. Any other result, the Department contends, would result in litigation on an inchoate budget and accomplish nothing.

We begin with a review of the DHS program and the relevant provisions of the Public Welfare Code.[4] Section 704.1(a) provides that the Department

> shall reimburse county institution districts or their successors for [a percentage of] expenditures incurred by them in the performance of their obligation pursuant to this act [Public Welfare Code] and the act of December 6, 1972 (P.L. 1464, No. 333), known as the "Juvenile Act" . . .

62 P.S. § 704.1(a).[5] Reimbursement to a county varies according to the service provided. For example, counties are reimbursed 80 percent of the cost of "an adoption subsidy," 62 P.S. § 704.1(a)(1); 60 percent of the cost of staffing for "child welfare services," 62 P.S. § 704.1(a)(3); and 100 percent of the "reasonable costs of providing adoption services," 62 P.S. § 704.1(a)(6). Reimbursement "shall not exceed the funds appropriated each fiscal year." Section 709.3(a) of the Public Welfare Code, 62 P.S. § 709.3(a).[6] To ensure that sufficient funds are appropriated to reimburse counties in accordance with the mandates of Section 704.1(a), counties are required to work with the Department on their portion of the budget for the Office of Children, Youth and Families.

Section 709.1 of the Public Welfare Code outlines the needs-based budgeting process.[7] By August 15, counties submit a

3. This Court's scope of review of a decision by the Pennsylvania Department of Public Welfare is limited to a determination of whether the Department's adjudication is supported by substantial evidence, is in accordance with the law, or whether constitutional rights were violated. *Allegheny County Office of Children, Youth & Families v. Department of Public Welfare*, 912 A.2d 342, 344 n. 2 (Pa.Cmwlth. 2006). The standard for reviewing an administrative agency's interpretation of its own regulation is as follows: first, the administrative interpretation is controlling unless it is plainly erroneous or inconsistent with the regulation; and second, the regulation must be consistent with the statute under which it is promulgated. *Morris Manor, Inc. v. Department of Public Welfare*, 127 Pa.Cmwlth. 483, 561 A.2d 1342, 1344 (1989).

4. Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503.

5. Section 704.1 was added to the Public Welfare Code by Section 2 of the Act of July 9, 1976, P.L. 846.

6. Section 709.3 was added to the Public Welfare Code by Section 3 of the Act of August 5, 1991 P.L. 315.

7. Section 709.1 was added to the Public Welfare Code by Section 3 of the Act of August 5, 1991, P.L. 315, 62 P.S. § 709.1, which provides in relevant part:

> (a) Prior to . . . August 15 [of] each year[,] counties shall submit to the department a needs based-budget in a form prescribed by the department containing their annual client and budget estimates and a description of proposed changes in their annual plan for the fiscal year beginning the following July 1.

needs-based budget estimate for the next fiscal year, beginning the following July 1. Section 709.1(a) of the Public Welfare Code, 62 P.S. § 709.1(a). The Department meets with representatives of each county to discuss and review the budget estimates, which the Department uses to determine the amount to be allowed each county. Section 709.1(b) of the Public Welfare Code, 62 P.S. § 709.1(b). By November 1, the Department submits an aggregate budget for the Office of Children, Youth and Families to the Governor. Section 709.1(c) of the Public Welfare Code, 62 P.S. § 709.1(c). When the Governor, in turn, submits his proposed General Fund budget to the General Assembly, his proposed budget includes supporting documentation for the amount he proposes for the Office of Children, Youth and Families. Section 709.1(d) of the Public Welfare Code, 62 P.S. § 709.1(d). The General Assembly, in its wisdom, enacts an annual appropriation that may or may not conform to the Governor's proposal.

To implement review of the needs-based budgeting process, the Department was directed in Section 709.2 to adopt implementing regulations no later than July 1, 1992, and it did so in Chapter 3140 of Title 55 of the Pennsylvania Code.[8] The budget-

---

(b) Representatives of the department shall meet with representatives of each of the counties to discuss the needs-based budgets and proposed changes in annual plans and shall make a thorough review of county submissions ... On the basis of the discussions and review, the department shall make its determination of each of the counties total costs and reimbursable costs and the amount allowed each of the counties in accordance with section 704.1(a).

(c) The total of the amounts allowed for each county pursuant to section 704.1(a) as determined by the department shall be the aggregate child welfare needs-based budget. *The determination of the aggregate child welfare needs-based budget and the child welfare needs of each county along with supporting documentation shall be submitted to the Governor by ... November 1 [of] each year ...*

(d) Contemporaneously with the submission of the General Fund budget, the *Governor shall submit the aggregate child welfare needs-based budget and the child welfare needs of each county along with supporting documentation to the ... Appropriations Committee of the Senate and the ... House of Representatives. The department may modify the calculation of the aggregate child welfare needs-based budget any time prior to May 1* of each year, provided that such revision is based on receipt of actual data or adopted regulatory changes which, when compared to previously calculated projected. data or regulation, requires the revision.

62 P.S. § 709.1 (emphasis added). Accordingly, by November, the Department submits an "aggregate child welfare needs-based budget" to the Governor. 62 P.S. § 709.1(c). Along with his proposed General Fund budget, the Governor submits "supporting documentation" for the child welfare needs-based budget, which is subject to revision by the Department up to May 1. 62 P.S. § 709.1(c).

8. Section 709.2 was added to the Public Welfare Code by Section 3 of the Act of August 5, 1991 P.L. 315, which provides:

(a) The department shall promulgate guidelines for reviewing and determining county-submitted needs-based budgets.... Guidelines for approving ... needs-based budgets shall be adopted by regulation no later than July 1, 1992 ...

(b) The department determination shall consider whether the county's budget is reasonable in relation to past costs, projected cost increases, number of children in the county and the number of children served, service level trends and projections of other sources of revenue.

(c) To the extent that county staffing patterns are less than that required to meet department staffing regulations, the department determinations shall permit a requesting county to hire sufficient staff to meet the minimum staffing regulations. A determination may disallow expenditures for additional staff if the functions for which the staff is to be hired already meets the minimum required by department regulations.

ing regulation states, in relevant part, as follows:

   (a) Prior to submitting its determination of a county's total costs and reimbursable costs to the governor and General Assembly, *the Department will meet with representatives of each of the counties to review and discuss the needs-based plan and budget estimate.* A county may involve the juvenile court and other appropriate agencies in the meeting.

   (b) The Department will review each county's needs-based plan and budget estimate to determine [that certain criteria have been met.]

         * * *

   (c) The Department will make its determination of the *county's total costs and reimbursable costs and the amount of State reimbursement allowed the county in accordance with section 704.1(a) of the Public Welfare Code* (62 P.S. § 704.1(a)), this chapter and Chapter 3170 (relating to allowable costs and procedures for county children and youth). The Department's determination will consider whether the county's needs-based plan and budget estimate is reasonable in relation to the following criteria ...

   (d) If the Department's assessment of the criteria established in subsection (c) indicates that a portion of the county's needs-based plan and budget estimate is not reasonable, that portion of the plan and budget estimate may be determined to be non-reimbursable by the Department.

   (e) *The county may appeal the Department's determination reached in accordance with subsection (c) under 2*

Pa.C.S. §§ *501–508 and 701–704* (relating to Administrative Agency Law) and Chapters 30 and 275 (relating to appeal and fair hearing; and appeal and fair hearing and administrative disqualification hearings).

55 Pa.Code § 3140.17(a)-(e) (emphasis added).

At issue is the meaning of 55 Pa.Code § 3140.17(e). DHS contends that it guarantees a hearing on the budget the Governor recommends to the legislature. The Department counters that at that stage in the budget process, DHS is entitled to no more than a meeting with the Department in accordance with 55 Pa.Code § 3140.17(a). The hearing in 55 Pa.Code § 3140.17(e), the Department contends, is limited to the final budget allocation that is assigned to counties after the budget is actually enacted. We agree with the Department.

■ First, an agency's interpretation of its own regulation is entitled to great deference and is controlling unless it is plainly erroneous or inconsistent with the regulation or the statute under which it is promulgated. *Morris Manor, Inc. v. Department of Public Welfare,* 127 Pa.Cmwlth. 483, 561 A.2d 1342, 1344 (1989). 55 Pa. Code § 3140.17 was promulgated, in part, to implement Section 709.2 of the Public Welfare Code, 62 P.S. § 709.2, and nowhere in Section 709.2 is a county expressly provided the right to challenge a budget allocation, final or otherwise. If 55 Pa. Code § 3140.17(e) is in any way inconsistent with the Public Welfare Code, it is because it gives counties more rights, not

---

   (d) No determination by the department may be based on payment standards that have not been adopted as of the time of

the review in accordance with the "Regulatory Review Act."
62 P.S. § 709.2.

fewer,[9] than those established in the Public Welfare Code. However, 55 Pa.Code § 3140.17(e) also implements another statute, the Administrative Agency Law, 2 Pa. C.S. §§ 501–508, 701–704, which governs the way agencies, such as the Department, conduct their affairs.

The next question, then, is whether 55 Pa.Code § 3140.17(e) correctly implements the Administrative Agency Law, which obligates all state agencies to give persons aggrieved by an agency's "determination" a hearing in accordance with the Administrative Agency Law. The Department asserts that 55 Pa.Code § 3140.17(e) implements this imperative. It argues that a tentative allocation is not a "determination" that in any way "aggrieves" a county and, therefore, it is not reviewable under Administrative Agency Law.

The Administrative Agency Law defines an "adjudication" as follows:

> Any final order, decree, decision, *determination* or ruling by an agency *affecting personal or property rights*, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made.

2 Pa.C.S. § 101 (emphasis added). An agency's adjudication is not valid except where a party is "afforded reasonable notice of a hearing and an opportunity to be heard." 2 Pa.C.S. § 504. DHS asserts that for the Governor's budget recommendation to be valid, DHS is entitled to a formal administrative hearing on that recommendation.[10]

A review of the budgeting process is appropriate here. The budget submitted by the Department to the Governor is a recommendation that is only the first step in the budgeting process. The Governor may send the Department's recommendation to the General Assembly without change, or he may send his own proposal to the legislature.[11] In turn, the General Assembly may, or may not, accept the Governor's proposal. Notably, the General Assembly appropriates an aggregate amount for the Office of Children, Youth and Families; it does not appropriate county-by-county.[12] DHS is entitled to lobby the General Assembly, alone or combined with other counties, for an increase in the appropriation for the Office of Children and Youth Services, if unsatisfied. Legislators may respond. It has done so

---

**9.** DHS has not challenged 55 Pa.Code § 3140.17(e) as exceeding the intent of the General Assembly.

**10.** An "aggrieved party" has been defined as follows:

> For a party to be aggrieved, it must have a substantial, direct, immediate, and not remote interest in the subject-matter of the litigation.... *In order to have a substantial interest in the subject-matter of the litigation, there must be a discernible adverse effect to some interest other than in the abstract.*

*Commonwealth v. J.H.*, 563 Pa. 248, 252, 759 A.2d 1269, 1271 (2000) (emphasis added).

**11.** In any case, the Governor must submit documentation to support his proposed aggregate child welfare needs-based budget. Sec-

tion 709.1(d) of the Public Welfare Code, 62 P.S. § 709.1(d).

**12.** The Department determines the allocation to each county in accordance with Section 709.3(b), which states:

> (b) The allocation for each county pursuant to section 704.1(a) shall be calculated by multiplying the sum of the Social Security Act (Public Law 74–271, 42 U.S.C. § 301 et seq.) Title IV–B funds and State funds appropriated to reimburse counties pursuant to section 704.1(a) by a fraction, the numerator of which is the amount determined for that county's child welfare needs-based budget and the denominator is the aggregate child welfare needs-based budget.

62 P.S. § 709.3(b).

in the past.[13] In any case, the Department cannot "allocate" a budget among the 67 counties in any meaningful way until the General Assembly enacts a general appropriations act.

*Adams County v. Department of Public Welfare,* 502 Pa. 47, 463 A.2d 1002 (1983), in which our Supreme Court considered the budgeting processes we consider here, is also instructive. In *Adams County,* the counties contended that they were entitled to be reimbursed a percentage of their *budget estimates* for the fiscal year, and this Court agreed. Accordingly, this Court ordered the Department to request the General Assembly to appropriate additional funds to supplement what had been previously appropriated in order to match the counties' estimated budgets. The Pennsylvania Supreme Court reversed, observing that this Court had assigned too much significance to the Department's role in the budgetary process and none to the Governor and General Assembly, which have the greatest roles to play. *Id.* at 56, 463 A.2d at 1006. The Supreme Court held that Section 704.1(a) of the Public Welfare Code requires the Department to reimburse counties a percentage of what

they *actually spend* on child welfare programs, but the statute did not obligate the Department to reimburse the counties a percentage of their *estimated costs.*

*Adams County* underscores the insignificance of a county's allocation of the amount of the budget for the Office of Children, Youth and Families, tentative or final, because DHS is entitled to be reimbursed for providing child welfare in accordance with the statutory formula. DHS cannot be reimbursed until it incurs an actual and valid child and welfare expense. *Id.* at 55, 463 A.2d at 1006. It is true that the Department may only spend in accordance with what is actually appropriated each fiscal year.[14] However, a general appropriations act is not the last word of the General Assembly for any fiscal year.[15] Thus, even where a county incurs expenses above its final allocation from the Department, it does not follow that its valid and reasonable expenses will not be reimbursed.

■ DHS argues that the Department's interpretation of 55 Pa.Code § 3140.17(e) effectively precludes it from meaningful review in light of the political question doctrine.[16] The Pennsylvania Supreme

13. As pointed out by the Department in its brief, the General Assembly has been known to increase appropriations to the Office of Children and Youth Services during the course of debate. *Cf.* HB 2579 of 2004, Printer's Number 3744 at 118 (State funds appropriation of $623,998,000 for payments to counties for children and youth programs) and Printer's Number 4326 at 131–32 (State funds appropriation of $632,547,000 for payments to counties for children and youth programs). The text of the bills may be found at:

http://www.legis.state.pa.us/cfdocs/billinfo/billinfo.cfm?syear=2003&sind=0&body=H&type=B&BN=2579.

14. *See* PA. CONST. art. 3, § 24 (stating that "[n]o money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers"); *see*

*also* Section 709.3(a) of the Public Welfare Code, 62 P.S. § 709.3(a) ("Reimbursement for child services made pursuant to section 704.1 shall not exceed the funds appropriated each fiscal year.").

15. *See, e.g.,* Act No. 8A, Act of July 17, 2007, providing "for the payment of bills incurred and remaining unpaid at the close of the fiscal year June 30, 2006."

16. The political question doctrine originates from the principle of separation of powers. *Pennsylvania School Boards Association, Inc. v. Commonwealth Association of School Administrators,* 569 Pa. 436, 451, 805 A.2d 476, 484–485 (2002). A basic precept of our form of government is that the executive, legislative and judicial branches are independent, co-equal branches. *Id.* at 451, 805 A.2d at 485.

Court has explained the political question doctrine as follows:

> Ordinarily, the exercise of the judiciary's power to review the constitutionality of legislative action does not offend the principle of separation of powers. There may be certain powers which our Constitution confers upon the legislative branch, however, which are not subject to judicial review. A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a non-justiciable "political question."

*Marrero v. Commonwealth,* 559 Pa. 14, 17, 739 A.2d 110, 112 (1999) (quoting *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977)).

The dissent agrees with DHS and observes, quite correctly, that judges may not intrude upon the legislative function of budget enactment. The premise to the dissent's analysis seems to be that DHS could not obtain relief in its appeal of its final allocation unless the courts could order the appropriation of additional funds, which it may not. This is a flawed premise.

First, the General Appropriations Act contains an aggregate amount for all counties' child welfare needs, not a county-by-county appropriation. There is elasticity in the aggregate budget. In the course of a fiscal year, some counties will require less funding than was projected while others will require more. Accordingly, if DHS succeeds in its challenge to the Department's final allocation of the annual budget, its increased allocation will not necessarily require an additional appropriation. The counties that spend less than their final allocation may generate the funds necessary to increase DHS's allocation.

Second, an increased final allocation does not necessarily mean that DHS will actually receive more reimbursement. As the Supreme Court explained in *Adams County,* a county's budget allocation does not guarantee that the county will receive that amount. Reimbursement is governed by a county's actual expenses, not its projected expenses.

Third, mistakes can and will happen in any budget year. It may be that a county will agree with the Department's final allocation but will subsequently find, for whatever reason, that its actual reimbursable expenses exceed the amount of that allocation. If these higher-than-expected expenses are not offset by lower-than-expected expenses of other counties, the total amount budgeted for the Office of Children, Youth and Families may be inadequate. As noted, the legislature can respond to such a shortfall by budgeting "for the payment of bills incurred and remaining unpaid at the close of the [prior] fiscal year." Act No. 8A, Act of July 17, 2007.

DHS's hearing on its final allocation amount is not meaningless. If DHS succeeds, the Department will have to allocate more to DHS, but this does not necessarily require a new budget for the entire Office of Children, Youth and Families.[17]

In any case, during the budgeting process DHS may lobby the Governor and the

---

**17.** The Department's July 28, 2006, final allocation letter advised DHS that it "may appeal this final allocation in accordance with 55 Pa.Code Ch. 275" and further indicated the appropriate procedures necessary to effectuate the appeal. R.R. at 311a. In fact, DHS filed an appeal of the final allocation set forth in the Department's July 28, 2006, letter. If it is ultimately determined in that appeal that there was a shortfall in the Department's final allocation, there are two possible results. First, other counties may not spend their allocated amounts leaving appropriated funds to reimburse DHS. Second, the Department may request additional funds, as has been done in the past.

General Assembly for additional funding. DHS does not need a court order to exercise this right. The budgeting process is beyond the power of courts to direct. Courts cannot direct the Governor how to speak to the legislature any more than they can direct the legislature what amount to appropriate for the Office of Children, Youth and Families.

DHS's tentative allocation of the budget the Governor submits to the General Assembly does not affect DHS's property rights. Indeed, it is nearly meaningless because the General Assembly, in its wisdom, will appropriate a General Fund that may or may not conform to the Governor's recommendation for the Office of Children, Youth and Families. We hold that the hearing, guaranteed by 55 Pa. Code 3140.17(e), is triggered by the Department's final allocation to DHS. The Department's interpretation of its own regulation is not "clearly erroneous" but, rather, logical and consistent with the statute it seeks to implement.[18]

We affirm the Department's dismissal of DHS's challenge to the Department's tentative allocation of a budget for the Office of Children, Youth and Families that is still in the proposal stage.

### ORDER

AND NOW, this 30th day of January, 2008, the Order of the Secretary of the Department of Public Welfare in the above-captioned matter is AFFIRMED.

### DISSENTING OINION BY Senior Judge FLAHERTY.

Respectfully, I dissent. I acknowledge, as pointed out by the majority, pursuant to

*Morris Manor, Inc., v. Department of Public Welfare,* 127 Pa.Cmwlth. 483, 561 A.2d 1342, 1344 (1989), that the Department's interpretation of its own regulations is entitled to judicial deference unless it is plainly erroneous, inconsistent with regulations, or contrary to the enabling statute. I believe, however, the Department's interpretation of 55 Pa.Code § 3140.17 is plainly erroneous and that the February 28, 2006 letter advising DHS of the proposed budget submitted to the Governor is subject to appeal.

Because it is crux of this appeal, I shall reiterate the full text of 55 Pa.Code § 3140.17(e) that states:

The county may appeal the Department's ***determination*** reached in accordance with subsection (c) under 2 Pa. C.S. §§ 501–508 and 701–704 (relating to Administrative Agency Law) and Chapters 30 and 275 (relating to appeal and fair hearing; and appeal and fair hearing and administrative disqualification hearings). (Emphasis added).

Pursuant to the Department's own regulation, appeals may be taken from its "determination." The question becomes, what is its determination?

The majority Opinion fully sets forth the full text of the applicable statutes, 709.1 and 709.2 of the Public Welfare Code, as well as 55 Pa.Code § 3140.17. Section 709.1 indicates that following a county's submission of its needs-based budget, representatives of the Department should meet with county officials to discuss the submissions. Following these discussions and an internal review, that Section specifically states the Department "shall" make "its determination" of the county's costs

---

**18.** As observed by the Department, by the time the tentative allocation hearing is done, the budget process will be over. At that point, the final allocation will be the operative allocation.

and reimbursable costs. Thereafter, a county's child welfare needs-based budget "as determined by the [D]epartment," shall be submitted to the governor for further submission to the Appropriations Committees of the Senate and the House of Representatives.

Section 709.2 lists certain criteria that should be considered in arriving at its "determination" including projected cost increases, the number of children served in each county, service level trends, and other projected sources of revenue. That Section also specifies what "determinations" may permit concerning staffing and payment standards. Section 709.2 also directs that the Department may promulgate guidelines for reviewing and determining county need-based budgets. In response to this directive, the Department promulgated 55 Pa.Code § 3140.17 that reiterates that "[p]rior to submitting its *determination* of a counties' needs-based budget to the governor and General Assembly, representatives will meet with each county to discuss the proposal." (Emphasis added)

Subsection (c) of that same section lists certain further criteria that should be considered in arriving at its "determination." These include caseworker to family ratios, staff to supervisor ratios, requests for specialized programs, and the percentage increase in budgeted expenditures in the county's proposed plan over the Departmentally determined needs-based budget of the prior year.

A review of this legal framework reveals that the Department arrives at a "determination" following a county's submission of its needs-based budget after meeting with county officials to discuss the submissions and considering numerous criteria. This determination is finalized prior to submission to the governor, and further submission to the General Assembly. The Department's finding that DHS had to wait until after the State Budget was approved by the General Assembly and that it may only appeal a final allocation letter based on the approved budget is an unreasonable interpretation of 55 Pa.Code § 3140.17(e). To say that the Department will arrive at a "determination" to be submitted to the governor and that a county can appeal that "determination" on one hand and then say an appeal cannot be taken until a condition subsequent on the other hand is contradictory by its terms. The Department's interpretation defies the plain meaning of language contained in the aforementioned statutes and the supporting regulation. Consequently, I believe the Secretary erred in finding DHS' appeal was appropriately dismissed.

I further disagree that review of the General Assembly's final allocation, in the context of an appeal of a final allocation letter, is permissible. As noted by the majority, the political question doctrine originates from the principle of separation of powers and the executive, legislative and judiciary branches are independent, co-equal branches. Moreover, per *Marrero v. Commonwealth*, 559 Pa. 14, 739 A.2d 110 (1999), a challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a non-justiciable "political question."

Article III, Section 11 of the Constitution of the Commonwealth of Pennsylvania confers on the Legislature the authority to enact appropriations bills. Any appeal taken by DHS from a "final allocation letter" sent to the county after the signing of the State Budget would be nothing less than an appeal of an appropriation made by the General Assembly. Hence, it would be an attack on the exercise of a power that the Constitution commits exclusively to the Legislature. Such an appeal would present a non-justiciable politi-

cal question.[1] This further supports my determination that the Department's interpretation of 55 Pa.Code § 3140.17(e) is unreasonable.

The majority suggests that DHS does have the right to appeal a final allocation letter and references the July 28, 2006 letter issued after the General Assembly enacted the budget for fiscal year 2006–07 that read DHS "may appeal this final allocation in accordance with 55 Pa.Code Ch. 275."[2] It further explains that DHS did, indeed, appeal this document. Nonetheless, I suggest that my research has not uncovered any decisional law by this Court or the Pennsylvania Supreme Court ruling upon whether such an appeal can be taken. The document issued by the Department is not controlling authority and regardless of whether the Department entertains DHS' latter appeal is not determinative of the legality of the same.[3]

In reviewing the majority's Opinion, I recognize that great weight is given the fact that the February 28, 2006 letter is a tentative allocation and confers no personal or property rights in and of itself. Consequently, the majority reasons that until the General Assembly approves a budget and awards a finite amount of money to fund mandated child welfare services, and the Department sends out its final allocation letter, DHS cannot be aggrieved and, as such, cannot appeal. In lieu of the political question doctrine, however, a county agency such as DHS cannot take an appeal of a budgetary appropriation because the power to appropriate is a power conferred on the Legislature. Moreover, as previously explained, 55 Pa.Code § 3140.17(e) provides that an appeal may be taken from a "determination" and the language contained throughout the entire regulation and the relevant statutes indicate the "determination" referred to is the

---

1. In asserting that an appeal from a final allocation letter issued by the Department following approval of the budget is precluded, I rely on language contained in *Thornburgh v. Lewis*, 504 Pa. 206, 470 A.2d 952 (1983). The issue in that case was whether the executive branch may, at the request of the Minority Chairman of the Senate Appropriations Committee, be required to supply certain budgetary information. In addressing appellants' argument that the underlying issue was a non-justiciable political question, the Court stated:

   It is the province of the Judiciary to determine whether the Constitution or laws of the Commonwealth require or prohibit the performance of certain acts. That our role may not extend to the ultimate carrying out of those acts does not reflect upon our capacity to determine the requirements of the law. **The Appellee asks the Court to direct the Governor to supply him with certain budgetary data. A decision that the Governor is required, or is not required, to do so would in no way involve the Judiciary in the role assigned to the General Assembly of enacting a budget, or in the role assigned to the Governor of preparing and**

   **approving a budget.** It would merely determine the meaning of Constitutional and statutory provisions, precisely the role of the Judiciary in our tri-partite system of government.

   *Thornburgh*, 504 Pa. at 212, 470 A.2d at 955.
   Unlike in *Thornburgh*, a ruling permitting a hearing, and presumably subsequent appeals, of a final allocation by the General Assembly would involve the Judiciary in the role assigned to it by Article III of the Constitution. The General Assembly has the role of enacting appropriations bills. A post-budget enactment review of the budget allocations would cause interference with a function properly delegated to a separate branch of government.

2. 55 Pa.Code Ch. 275 deals with a party's rights and obligations in filing an appeal of a Departmental action.

3. Reference is also made to a County's right to lobby the General Assembly alone or combined with other counties, for an increase in appropriations. Nonetheless, this is not dispositive of DHS's right to appeal a "determination" of the Department.

one submitted to the governor prior to ever being received by the General Assembly. As such, I disagree with the majority's analysis.[4]

I believe 55 Pa.Code § 3140.17(e) mandates that DHS is entitled to appeal from the Department's February 28, 2006 letter. Therefore, I would reverse the Order of the Secretary of the Department and remand this matter to the ALJ for her to consider DHS' appeal on the merits. If it is ultimately determined that there was a shortfall in the Department's original determination, a proposal for additional funds may be submitted to the Governor in addition to the needs-based budget for a future fiscal year for further submission to the General Assembly and such proposals should be considered as part of the traditional budgeting process.

---

**4.** Citation is made to the Supreme Court's *Adams County* decision in support of the proposition that the February 28, 2006 letter was merely a tentative allocation that does not create a concrete right subject to review. That case does not mention or analyze a county's right to appeal a "determination" as contemplated in 55 Pa.Code § 3140.17(e). Rather, it discusses the issue of whether the Department is required to reimburse counties for a percentage of expenditures actually made for child welfare programs as opposed to estimated costs. Thus, *Adams County* is inapplicable.