MENTAL HEALTH ASSOCIATION IN PENNSYLVANIA; The Arc of Pennsylvania; Vision for EQuality, Inc.; NAMI Southwestern Pennsylvania; Speaking for Ourselves; Pennsylvania Mental Health Consumers Association; and Mental Health Association of Southeastern Pennsylvania, Petitioners

v.

Tom CORBETT, in his official capacity as Governor of the Commonwealth; Office of the Budget of the Commonwealth of Pennsylvania; and Department of Public Welfare of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided July 30, 2012.

Publication Ordered Oct. 16, 2012.

Carol A. Horowitz, Pittsburgh, and Robert W. Meek, Philadelphia, for petitioners.

Michael L. Harvey, Senior Deputy Attorney General, Harrisburg, for respondents.

BEFORE: LEADBETTER, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

The Office of the Attorney General (AG) filed preliminary objections on behalf of Tom Corbett, in his official capacity as Governor of the Commonwealth (Governor), the Office of the Budget (OOB), and the Department of Public Welfare (DPW), to the petition for review filed by the Mental Health Association in Pennsylvania, The ARC of Pennsylvania, Vision for EQuality, Inc., NAMI Southwestern Pennsylvania, Speaking for Ourselves, Pennsylvania Mental Health Consumers Association, and Mental Health Association of Southeastern Pennsylvania (collectively, Petitioners). The issues for this Court's review are whether the petition for review (1) states a claim upon which relief may be granted, (2) presents a non-justiciable political question, (3) violates the separation of powers doctrine, and (4) presents an action that is ripe for judicial review. The AG's preliminary objections are sustained.

Petitioners are various non-profit corporations that advocate and lobby on behalf of persons with mental health issues and intellectual disabilities (MH/ID). Under the Mental Health and Intellectual Disability Act of 1966 (MH/ID Act),[1] the General Assembly appropriates to DPW funds for mental health services administered by DPW's Office of Mental Health and Substance Abuse Services (OMHSAS), and money for intellectual disability services overseen by DPW's Office of Developmental Programs (ODP). OMHSAS and ODP allocate the funds appropriated to DPW by the General Assembly to counties, and they assure that the funds are used for their allocated purposes. Other community-based social services that DPW and the counties deem necessary (i.e., child welfare services, homeless assistance and drug and alcohol programs, etc.) are funded out of a separate Human Services Development Fund (HSDF) Block Grant Program.

Section 201 of the MH/ID Act states that the DPW has the duty, *inter alia:*

(1) To assure within the State the availability and equitable provision of adequate mental health and intellectual disability services for all persons who need them....

. . . .

(3) To consult with and assist each county in carrying out mental health and intellectual disability duties and functions

. . . .

. . . .

(5) To establish and maintain working relationships with other governmental bodies and public and private agencies, institutions and organizations so as to assure maximum utilization of services and facilities which each such governmental body and public and private agency, institution and organization may have....

. . . .

(7) To make grants, pay subsidies, purchase service and provide reimbursement for mental health and intellectual disability services in accordance with this act.

50 P.S. § 4201. Accordingly, DPW and the county mental health agencies engage in a planning process. The county MH/ID boards review their county's needs and prepare annual plans and estimates of expenditures (plans). The boards submit the plans to the local authorities (typically, the board of county commissioners) for review and approval. Once approved, the plans

1. Act of October 20, 1966, P.L. 96 Special Sess. No. 3, *as amended,* 50 P.S. §§ 4101– 4704.

are submitted to DPW with a notice of public hearing. DPW reviews the plans and notifies the counties of the results of its reviews.

Pursuant to Section 509 of the MH/ID Act, 50 P.S. § 4509, DPW has the authority to make grants to the counties from state and federal funds to defray part of the MH/ID services costs, "in the amount of [90%] of the excess of all such approved expenditures for such programs over the amount paid for the same purpose from any public or private source directly to participating counties, facilities or individuals[,]" in four quarterly installments, as long as DPW is satisfied that the counties are complying with its regulations and minimum standards of performance. 50 P.S. § 4509(1), (4). The counties are responsible for the remaining 10% from public or private sources.

OOB annually obtains DPW's budget pursuant to Section 610(a) of the Administrative Code of 1929 (Administrative Code),[2] and submits it to the Governor pursuant to Section 610(b) of the Administrative Code, 71 P.S. § 230(b). The Governor may approve, disapprove or alter DPW's budget requests. 71 P.S. § 230(b). Article VIII, Section 12(a) of the Pennsylvania Constitution requires the Governor to submit an annual balanced operating budget to the General Assembly detailing proposed expenditures and estimated revenues. Pa. Const. art. VIII, § 12(a); see also Sections 613 and 701(g) of the Administrative Code.[3] Article VIII, Section 13 of the Pennsylvania Constitution requires the General Assembly to make appropriations from the Commonwealth's available revenues and surplus, and to adopt a balanced budget. Pa. Const. art. VIII, § 13.

According to Petitioners, for more than 20 years, DPW has submitted requests for funding MH/ID programs that have been "woefully inadequate to meet the needs of Pennsylvania citizens with those disabilities," and the budgets developed by OOB and submitted to the Governor "never request the Legislature to appropriate the funding that is needed to provide necessary services under the MH/ID Act." Pet. for Review at 16.

On February 12, 2012, the Governor submitted his proposed budget to the General Assembly for fiscal year 2012–2013 (proposed budget).[4] In addition to an approximately 20% cut in DPW funding, the proposed budget contains a request by the Governor to shift all of the monies appropriated by the General Assembly for MH/ID services into the HSDF Block Grant, in order for all of the monies to be used for MH/ID and other community-based services to be distributed by the HSDF Block Grant, rather than being held by DPW specifically for use by OMHSAS and ODP. To accomplish this change, the Governor has proposed changes to the MH/ID Act.

On March 14, 2012, Petitioners filed a petition for review seeking a writ of mandamus, a declaratory judgment and an injunction (1) for Respondents' failure to assure the provision of adequate MH/ID services (Count I); and (2) Respondents' proposal to transfer MH/ID funds to the HSDF Block Grant (Count II). On April 16, 2012, the AG filed preliminary objec-

**2.** Act of April 9, 1929, P.L. 177, *as amended,* added by Section 3 of the Act of September 27, 1978, P.L. 775, 71 P.S. § 230(a).

**3.** Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §§ 233, 241(g). Section 613 was add-

ed by Section 3 of the Act of September 27, 1978, P.L. 775.

**4.** Effective July 1, 2012 through June 30, 2013.

tions.[5] Petitioners filed their response and brief in opposition to Respondents' preliminary objections on May 22, 2012. Argument was held before this Court on June 4, 2012.

The AG argues *inter alia* that, on the face of the petition for review, Petitioners are not entitled to mandamus, declaratory judgment or an injunction because they improperly seek judicial review of non-justiciable political questions reserved for the executive and legislative branches of the Commonwealth, in violation of the separation of powers doctrine. We agree.

"A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government." *Sweeney v. Tucker*, 473 Pa. 493, 507–08, 375 A.2d 698, 705 (1977). Accordingly, "[t]he separation of powers doctrine provides that no branch of government should exercise the functions exclusively committed to another branch." *Harrisburg Sch. Dist. v. Hickok*, 762 A.2d 398, 411–12 (Pa.Cmwlth. 2000). "There may be certain powers which our Constitution confers upon the legislative branch ... which are not subject to judicial review. A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a non[-]justiciable 'political question.'" *Sweeney*, 473 Pa. at 508, 375 A.2d at 705 (citation omitted).

In *Sweeney*, the Pennsylvania Supreme Court adopted the standard announced in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), for determining whether a case involves a non-justiciable political question.

Prominent on the surface of any case held to involve a political question *is found a textually demonstrable constitutional commitment of the issue to a coordinate political department;* or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for non[-]judicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Commonwealth v. TAP Pharm. Prods., Inc.*, 36 A.3d 1112, 1153–54 (Pa.Cmwlth. 2011) (quoting *Sweeney*, 473 Pa. at 510, 375 A.2d at 706) (emphasis added). "In cases involving political questions ... the courts will not review the actions of another branch because the determination whether the action taken is within the power granted by the Constitution has been entrusted exclusively and finally to

---

5. Preliminary objections to an original jurisdiction petition for review are permissible under Pa.R.A.P. 1516(b). Our review of matters before this Court on preliminary objections is limited to the pleadings. *Pennsylvania State Lodge, Fraternal Order of Police v. Dep't of Conservation & Natural Res.*, 909 A.2d 413 (Pa.Cmwlth.2006), *aff'd*, 592 Pa. 304, 924 A.2d 1203 (2007).

[This Court is] required to accept as true the well-pled averments set forth in the [pleadings], and all inferences reasonably deducible therefrom. Moreover, the [C]ourt need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections.

*Id.* at 415–16 (citations omitted).

the political branches of government for self-monitoring." *Sweeney*, 473 Pa. at 509, 375 A.2d at 706 (quotation marks omitted). In its June 1, 2012 order denying Petitioners' motion for special relief seeking preliminary injunctive and mandamus relief, this Court stated:

> [J]udicial precedent based upon the separation of powers doctrine and the political question doctrine is less than supportive of petitioners' position. *See Marrero ex rel. Tabalas v. Commonwealth* [,] 559 Pa. 14, 739 A.2d 110 (1999) (legislature's alleged failure to provide adequate funding for school district presented non-justiciable political question); *Finn v. Rendell*, 990 A.2d 100 (Pa. Cmwlth.2010) (court order granting county commissioners relief in action seeking to compel state payment of district attorneys' salaries would violate separation of powers doctrine); *City & Cnty. of Phila. ex rel. Dep't of Human Servs. v. Dep't of Public Welfare*, 941 A.2d 766, 774 (Pa.Cmwlth.2008) (county agency not entitled to administrative hearing before DPW on tentative allocation of governor's proposed budget).

*Mental Health Ass'n v. Corbett* (Pa. Cmwlth. 255 M.D.2012, filed June 1, 2012), slip op. at 5.

Here, the Governor was well within his constitutionally-granted powers not to increase or direct the increase of funding sought by DPW, and to send the proposed budget to the General Assembly on February 12, 2012. Moreover,

> [a]lthough the Constitution directs the Governor each year to 'submit' a budget to the General Assembly, PA. CONST. art. VIII, § 12, appropriations are to be 'made by the General Assembly,' PA. CONST. art. VIII, § 13, and '[n]o money shall be paid out of the treasury, except on appropriations made by law,' PA. CONST. art. III, § 24. So long as the

General Assembly keeps the budget submitted by the Governor balanced, *see* PA. CONST. art. VIII, § 13(a), the Constitution allows the General Assembly to deviate as much as it wishes from the Governor's proposals. '[T]he General Assembly enacts the legislation establishing those programs which the state provides for its citizens and appropriates the funds necessary for their operation[ ] [while] [t]he executive branch implements the legislation by administering the programs.'

*Jubelirer v. Rendell*, 598 Pa. 16, 41–42, 953 A.2d 514, 529 (2008). Finally, it is no secret that the Commonwealth is facing an enormous financial crisis, which has resulted in deep cuts by every Commonwealth department and agency, and by the General Assembly and the Judiciary. Accordingly, the Governor has proposed a cut in DPW's funding, and a shift of the monies appropriated for MH/ID services into the HSDF Block Grant for MH/ID and other community-based services distribution. It is the General Assembly, however, that ultimately determines how statutory budget obligations will be satisfied, and whether the MH/ID Act will be amended. There is no authority for this Court to insert itself into that process.

This Court has stated: "The budgeting process is beyond the power of courts to direct. Courts cannot direct the Governor how to speak to the legislature any more than they can direct the legislature what amount to appropriate for [specific departments within DPW]." *Phila. Dep't of Human Servs. v. Dep't of Pub. Welfare*, 941 A.2d 766, 775 (Pa.Cmwlth.2008). Thus, Petitioners' request for this Court to assure the provision of adequately-funded MH/ID services (Count I), and (2) to prevent the transfer of MH/ID funds to the HSDF Block Grant (Count II), contravene the political question and separation of

powers doctrines. Respondents' preliminary objections that Petitioners' claims present non-justiciable political questions and violate the separation of powers doctrine are, therefore, sustained.[6]

### ORDER

AND NOW, this 30th day of July, 2012, the Attorney General's preliminary objections to Petitioners' petition for review are sustained. Petitioners' petition for review is dismissed.

---

**6.** Having reached this decision, we need not also determine whether the petition for review states a claim upon which relief may be granted, or whether it presents an action that is ripe for judicial review.