IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy M. Smires aka Stacy M. Champ, :
Lanny S. Riffey, Cole M. Viani, :
William T. Albritton, David J. :
Glatfelter, Alfred H. Butler IV, :
Jose Javier Colon, Troy Lee :
Mundis, Michael J. Eisenhart II, :
Frank W. Sanfilippo, Vincent D. :
Martin, Harold Lee Williams, :
Matthew B. Hess, Howard :
Johnson, Christopher L. Gantz, :
Shawn Benedict, Matthew Richard :
Gallatin, Seth Edward Gray, :
Joshua M. Jackson, Jeremy D. :
Williams, Evan M. Zellman, :
Jena Spence, :
                   Petitioners :
                   :
         v. : No. 146 M.D. 2015
            : Argued: September 14, 2015
            :
Don O'Shell, Clerk of Courts :
of York County, Pennsylvania :
and the Pennsylvania Department :
of Transportation, :
              Respondents :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION
BY JUDGE LEAVITT                           FILED: October 26, 2015

          Stacy M. Smires a/k/a Stacy M. Champ, Lanny S. Riffey, Cole M.

Viani, William T. Albritton, David J. Glatfelter, Alfred H. Butler, IV, Jose Javier

Colon, Troy Lee Mundis, Michael J. Eisenhart, II, Frank W. Sanfilippo, Vincent D.

Martin, Harold Lee Williams, Matthew B. Hess, Howard Johnson, Christopher L.

Gantz, Shawn Benedict, Matthew Richard Gallatin, Seth Edward Gray, Joshua M. Jackson, Jeremy D. Williams, Evan M. Zellman and Jena Spence (Licensees) have filed an action in this Court's original jurisdiction seeking a writ of mandamus against Don O'Shell, Clerk of Courts of York County and the Pennsylvania Department of Transportation (PennDOT). The writs Licensees seek will restore their operating privileges notwithstanding their convictions for offenses that require suspension under the Vehicle Code.[1] The Clerk and PennDOT have filed preliminary objections seeking a dismissal of Licensees' petition for the reason that they have another legal remedy to challenge their license suspensions, and this remedy bars relief in mandamus.

## Background

Licensees' petition for review alleges that in 2014, an audit of the Clerk's office discovered approximately 5,000 criminal convictions that were not reported to PennDOT as required by statute. Petition, ¶11. Section 6323 of the Vehicle Code states, in relevant part, as follows:

> Subject to any inconsistent procedures and standards relating to reports and transmission of funds prescribed pursuant to Title 42 (relating to judiciary and judicial procedure):
>
> (1) The following shall apply:
>
> > (i) The clerk of any court of this Commonwealth, *within ten days after final judgment of conviction or acquittal or other disposition of charges* under any of the provisions of this title or under section 13 of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug,

---

[1] 75 Pa. C.S. §§ 101-9805.

Device and Cosmetic Act,[2] including an adjudication of delinquency or the granting of a consent decree, shall send to the department a record of the judgment of conviction, acquittal or other disposition.

75 Pa. C.S §6323(1)(i) (emphasis added).[3] Licensees' convictions, which occurred between 2004 and 2009, were not reported within ten days of the conviction. Petition, ¶12 (suspensions were "not issued for between 5 years and 10 years after the conviction date."). Rather, they were not reported until 2014, when the Clerk submitted several thousand Forms DL-21 to PennDOT after his discovery of the unreported convictions. Petition, ¶12. Upon receipt of the Clerk's notices, PennDOT suspended the operating privileges of Licensees under authority of Section 1532(c) of the Vehicle Code. It states as follows:

> The department shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state, or any person 21 years of age or younger upon receiving a certified record of the person's conviction or adjudication of delinquency under 18 Pa.C.S. § 2706 (relating to terroristic threats) committed on any

---

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144.

[3] PennDOT's regulation states:

The clerk of a court of record of this Commonwealth, *within 10 days after final judgment of conviction or acquittal or other disposition* of charges under 75 Pa.C.S. (relating to vehicle code), shall send to the Department a record of the judgment of conviction, acquittal or other disposition on Form DL-21. A record of the judgment shall also be forwarded to the Department, on Form DL-21, upon conviction or acquittal of a person of a felony in the commission of which the judge determines that a motor vehicle was essentially involved, under 75 Pa.C.S. §6323 (relating to reports by court of record).

67 Pa. Code §81.4(a) (emphasis added).

> school property, including any public school grounds, during any school-sponsored activity or on any conveyance providing transportation to a school entity or school-sponsored activity.

75 Pa. C.S. §1532(c).

Licensees contend that the Clerk's failure to report the convictions within the required 10-day time period has rendered the Clerk's DL-21 Forms illegal, null and void *ab initio*. In the alternative, Licensees argue that the Clerk's extreme delay violates due process and equal protection of the laws. They contend that the Clerk should have confiscated their licenses at the time of conviction and did not do so. 75 Pa. C.S. §1540(a).[4] Accordingly, the Clerk is equitably estopped from issuing untimely DL-21 Forms, and PennDOT is estopped from acting on the delayed notices. Finally, Licensees assert that the doctrine of laches bars the Clerk and PennDOT from acting upon their ancient convictions.

Licensees request a writ of mandamus to the Clerk to issue new DL-21 Forms that nullify the prior forms or, in the alternative, date the suspensions to the respective dates of conviction. Licensees also request a writ of mandamus directing PennDOT to reject the Clerk's prior DL-21 Forms as untimely filed.

---

[4] It states:

> Upon a conviction by a court of competent jurisdiction for any offense which calls for mandatory suspension in accordance with section 1532 (relating to suspension of operating privilege), the court or the district attorney shall require the surrender of any driver's license then held by the defendant and shall forward the driver's license together with a record of the conviction to the department. The suspension shall be effective upon a date determined by the court or district attorney or upon the date of surrender of the license to the court or district attorney, whichever shall first occur.

75 Pa. C.S. §1540(a).

4

The Clerk and PennDOT have filed preliminary objections in the nature of a demurrer. They seek dismissal of Licensees' action because they have a statutory remedy. Section 1150(a) of the Vehicle Code states as follows:

> Any person who has been denied a driver's license, whose driver's license has been canceled, whose commercial driver's license designation has been removed or whose operating privilege has been recalled, suspended, revoked or disqualified by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure). The appellant shall serve a copy of the petition for appeal, together with a copy of the notice of the action from which the appeal has been taken, upon the department's legal office.

75 Pa. C.S. §1550(a). Indeed, Licensees appealed their suspensions to the court of common pleas. Petition, ¶13 (stating that Licensees' statutory appeals "are pending before [courts of common pleas] and have been consolidated for disposition[.]").

Licensees respond that the statutory appeal does not encompass a challenge to the actions of the Clerk. Indeed, the trial court has dismissed the Clerk as a party in the suspension appeals, leaving Licensees without a way to hold the Clerk accountable for not reporting their convictions within 10 days in accordance with his statutory duty.

**Mandamus**

The common law writ of mandamus lies to compel the performance of a ministerial act or mandatory duty. *Chesapeake Appalachia, LLC v. Golden*, 35 A.3d 1277, 1280 n. 7 (Pa. Cmwlth. 2012). "The burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right to such relief." *Werner v. Zazyczny*, 681 A.2d 1331, 1335 (Pa. 1996). Mandamus requires a clear

5

legal right to relief in the petitioner, a corresponding duty in the respondent and the lack of any other adequate and appropriate remedy. *Wilson v. Pennsylvania Board of Probation & Parole*, 942 A.2d 270, 272 (Pa. Cmwlth. 2008). Mandamus is not available to establish legal rights but only to enforce rights that have been established. *Id.* As a high prerogative writ, mandamus is rarely issued and never to interfere with a public official's exercise of discretion. *Chadwick v. Dauphin County Office of Coroner*, 905 A.2d 600, 603 (Pa. Cmwlth. 2006).

In considering preliminary objections, this Court will treat all the well-pleaded material facts set forth in the petition as true and make all reasonable inferences that may be drawn from those facts. *Werner*, 681 A.2d at 1335. This does not include legal conclusions stated in the petition. *Armstrong County Memorial Hospital v. Department of Public Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013). Preliminary objections will be sustained only where it is clear that a pleading does not state a legal claim. *Id*.

Central to the preliminary objections of the Clerk and PennDOT is that Licensees' statutory appeals constitute an adequate and appropriate remedy that precludes relief in mandamus and, in any case, Licensees do not have a clear legal right to relief.

### Relevant Precedent

A body of law has been developed on the subject of a clerk of court's delay in reporting a licensee's conviction for violations of the Vehicle Code or The Controlled Substance, Drug, Device and Cosmetic Act to PennDOT. We begin with a review of this precedent.

In *Department of Transportation, Bureau of Driver Licensing v. Green*, 546 A.2d 767 (Pa. Cmwlth. 1988), *affirmed without opinion*, 569 A.2d 350

6

(Pa. 1990), a clerk of courts notified PennDOT 14 months after a licensee's conviction, to which PennDOT responded with a license suspension. On appeal, the licensee argued that the untimely notice violated the statute, due process and caused him extreme prejudice because he lost his employment. The trial court agreed with the licensee and sustained his appeal. This Court reversed. We explained as follows:

> Under the Vehicle Code, [PennDOT] is the agency made responsible for imposition of the sanctions which the law uses to keep unsafe drivers off the highways for stated periods. This court has held that a material breach by [PennDOT] of that responsibility will invalidate the legal effectiveness of the sanction. If [PennDOT] too often failed to meet the responsibility thus focused upon it, the locus of fault would be clear and executive and legislative remedies could be directed at [PennDOT]. But a very different situation would prevail if the effectiveness of the Vehicle Code sanctions became dependent upon scores of court clerks and hundreds of functionaries within the minor judiciary. This court's rule therefore protects the vehicle safety laws from vulnerability to delays within a system where detection and correction of official failure would be much more difficult.

*Green*, 546 A.2d at 769.

Thereafter, in *Pokoy v. Department of Transportation, Bureau of Driver Licensing*, 714 A.2d 1162 (Pa. Cmwlth. 1998), a licensee challenged her suspension that was imposed after the clerk of courts waited four years to notify PennDOT of her DUI conviction. The licensee argued that "four years was an unreasonably long delay and that she has been prejudiced by the delay." *Id.* at 1164. We concluded that a prejudicial delay could be relevant but only where the delay was attributable to PennDOT. We set up a two-prong test:

> In order for Appellant to successfully challenge [PennDOT's] license suspension, she bears the burden of establishing: (1) that

there was an unreasonable delay *that was attributable to [PennDOT];* and (2) that the delay caused her to believe that her operating privileges would not be impaired and that she relied on this belief to her detriment.

*Id.* (emphasis in original). To meet the first prong

the law is settled that, where [PennDOT] is not guilty of administrative delay, *any delay caused by the judicial system (e.g., the Clerk of Courts*) not notifying [PennDOT] in a timely manner, *will not invalidate a license suspension* that is authorized by the Code and imposed by [PennDOT]. *Fordham v. Department of Transportation, Bureau of Driver Licensing*, 663 A.2d 868 (Pa.Cmwlth.1995); [and *Green*]. In determining whether there was an unreasonable delay attributable to [PennDOT], the relevant time period is that between the point at which [PennDOT] receives notice of the driver's conviction from the judicial system and the point at which [PennDOT] notifies the driver that her license has been suspended or revoked. *Fordham.* In other words, only an unreasonable delay by [PennDOT], and not the judicial system, invalidates [PennDOT's] license suspension.

*Id*. (emphasis added). Because the licensee could not meet the first prong of the two-part test, this Court upheld the license suspension.

More recently, in *Fruehwirth v. Department of Transportation, Bureau of Driver Licensing*, (Pa. Cmwlth., No. 104 C.D. 2012, filed September 7, 2012), a licensee challenged his suspension for underage drinking. Licensee was charged in 2004, but the charge was not processed by the magisterial district judge's office until 2011. Believing he would be subject only to a fine, the licensee did not attend the hearing and was convicted *in absentia*. Thereafter, the licensee learned that this conviction also subjected him to a 90-day license suspension.

The trial court sustained the licensee's appeal. The trial court acknowledged that PennDOT did not cause the delay. Nevertheless, it concluded

8

that a suspension issued seven years after the conviction authorized equitable relief. This Court reversed. Again, we confirmed that PennDOT could not be held liable for a delay it did not cause.

Also relevant is precedent that has established that the 10-day deadline for a clerk of court to notify PennDOT of a conviction is directory, not mandatory. In *Department of Transportation, Bureau of Driver Licensing v. Claypool*, 618 A.2d 1231 (Pa. Cmwlth. 1992), the clerk did not notify PennDOT of the licensee's DUI conviction until 23 days after the date of conviction. Because Section 6323(1)(i) states that the notice "shall" be sent to PennDOT "within ten days after final judgment of conviction[,]" 75 Pa. C.S. §6323(1)(i), the licensee argued that the clerk's failure to comply with the statute rendered PennDOT's suspension invalid. We disagreed.

We explained the distinction between the mandatory and directory use of the word "shall" as follows:

> To hold that a provision is directory rather than mandatory, does not mean that it is optional—to be ignored at will. Both mandatory and directory provisions of the legislature are meant to be followed. It is only in the *effect* of non-compliance that a distinction arises. A provision is mandatory when failure to follow it renders the proceedings to which it relates illegal and void; it is directory when the failure to follow it does not invalidate the proceedings.

*Claypool*, 618 A.2d at 1232-33 (quoting *Pleasant Hills Borough v. Carroll*, 125 A.2d, 466, 469 (Pa. Super. 1956) (emphasis in original)). A license suspension for DUI convictions promotes health and safety. We concluded that this important sanction could not turn on the actions of "court clerks throughout the Commonwealth." *Id.* at 1233. Citing *Green*, 546 A.2d at 769, we explained, further, that PennDOT has no ability to supervise court clerks. Accordingly, we

sustained the license suspension notwithstanding the clerk's delay in reporting the licensee's conviction.

## Statutory Appeal

PennDOT and the Clerk base their demurrer on the statutory remedy that Licensees have under Section 1150(a) of the Vehicle Code to appeal their license suspensions "to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 75 Pa. C.S. §1550(a). This *de novo* appeal before a court of law is an appropriate and adequate remedy that can be used to raise any defense, whether constitutional or statutory. *Rutkowski v. Department of Transportation, Bureau of Driver Licensing*, 780 A.2d 860, 862 (Pa. Cmwlth. 2001) ("In accordance with Section 1550 of the Vehicle Code, a driver's right to a *de novo* hearing is mandatory[.]"). That precedent does not favor Licensees does not mean that they may seek a writ of mandamus. To the contrary, it means that Licensees cannot meet the prerequisite to mandamus that they have a clear right to relief. Further, Licensees may use the statutory appeal as a vehicle to have the above-cited precedent modified or even reversed. The trial courts may be bound by precedent, but the appellate courts may be persuaded to revise previously established principles.

Licensees raise a number of legal theories in support of their position that PennDOT's suspension of their respective licenses was illegal. PennDOT and the Clerk respond that none of these theories has any merit. We consider Licensees' legal theories *ad seriatim.*

10

**Licensees' Position**

Licensees explain that suspension appeals address errors of PennDOT. By contrast, here, the error occurred in the Office of the Clerk of Courts. Because the Clerk is not a party in the statutory appeal, the trial court lacks jurisdiction to fashion an order directing the Clerk to withdraw or amend the untimely notices, leaving Licensees without a remedy. In support, they attach a transcript from two license suspension appeals, wherein the trial court judge expressed concern because their licenses were suspended years after their convictions. These courts noted that the prejudice was obvious and suggested that this Court should revisit its precedent.[5] Essentially, Licensees argue that the Clerk breached his statutory duty to report their convictions promptly. This breach of duty should prevent PennDOT from acting upon the convictions.

**a. Clerk as PennDOT Agent**

Licensees first argue that the Clerk acts as PennDOT's agent. In support, they cite Section 9728(a)(1) of the Sentencing Code, which makes the Clerk an agent for various departments of the county:

> (1) Except as provided in subsection (b)(5) [relating to inmate accounts], all restitution, reparation, fees, costs, fines and penalties shall be collected by the county probation department or *other agent designated by the county commissioners* of the county with the approval of the president judge of the county for that purpose in any manner provided by law. However, such restitution, reparation, fees, costs, fines and penalties are

---

[5] *See* hearing transcript of February 25, 2015, in *William T. Albritton v. Commonwealth of Pennsylvania, Department of Transportation* (York County, No. 2014-SU-3716-27) and hearing transcript of January 28, 2015, in *Matthew Gallatin v. Commonwealth of Pennsylvania, Department of Transportation*, (York County, No. 2014-SU-3192-27). Licensees' Brief, Exhibits B and C.

part of a criminal action or proceeding and shall not be deemed debts. A sentence, pretrial disposition order or order entered under section 6352 (relating to disposition of delinquent child) for restitution, reparation, fees, costs, fines or penalties shall, together with interest and any additional costs that may accrue, be a judgment in favor of the probation department upon the person or the property of the person sentenced or subject to the order.

42 Pa. C.S. §9728(a)(1). Licensees contend that, by analogy, the Clerk acts as an agent for PennDOT.

PennDOT responds with a separation of powers argument. The Clerk and PennDOT are each state government actors, but they belong to distinct and co-equal branches of government, independent of each other. *Mental Health Association in Pennsylvania v. Corbett*, 54 A.3d 100, 104 (Pa. Cmwlth. 2012) (quoting *Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977) ("A basic precept of our form of government is that the executive, the legislature and the judiciary are independent, co-equal branches of government.")). As such, "[t]he separation of powers doctrine provides that no branch of government should exercise the functions exclusively committed to another branch." *Id.* (quoting *Harrisburg School District v. Hickok,* 762 A.2d 398, 411–12 (Pa. Cmwlth. 2000)). PennDOT belongs to the executive branch, and the Clerk belongs to the judicial branch. Neither may control the other nor act as the agent for the other.

### b. Due Process

Licensees claim that the Clerk had no authority to issue the DL-21 Forms beyond the 10-day limitation set forth in Section 6323(1)(i) of the Vehicle Code. As a matter of due process, they were entitled to a hearing before the Clerk reported their various convictions to PennDOT in which they could have litigated the validity of the Clerk's actions.

12

PennDOT and the Clerk respond that *Claypool*, 618 A.2d 1231, established that the 10-day limitation period is discretionary and, further, that PennDOT may not be held responsible for the Clerk's delay. The Pennsylvania Supreme Court has explained, "the essential elements of due process are notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *Department of Transportation, Bureau of Driver Licensing v. Clayton*, 684 A.2d 1060, 1064 (Pa. 1996) (quoting *Soja v. Pennsylvania State Police*, 455 A.2d 613, 615 (Pa. 1982)). When a person's operating privilege is suspended, he is given due process; he is afforded an appeal to the trial court, pursuant to Section 1550(a) of the Vehicle Code, 75 Pa. C.S. §1550(a). This is all the process to which Licensees are entitled.

### c. Equal Protection

Licensees next claim that the Clerk chose, arbitrarily, to audit the performance of his office from 2004 to the present.[6] As a result, the Clerk has

---

[6] The Clerk's audit appears to have been undertaken due to the implementation of Section 6323(1)(ii) of the Vehicle Code, added by the Act of October 27, 2014, P.L. 2905, No. 189, which states:

> (ii) The following shall apply:
>
>> (A) The clerk of any court of this Commonwealth shall, by January 1, 2016, send to the department each record of the following, including an adjudication of delinquency or the granting of a consent decree, that was not sent within ten days after final judgment of conviction or acquittal or other disposition:
>>
>>> (I) A judgment of conviction, adjudication of delinquency or a granting of a consent decree under section 13 of The Controlled Substance, Drug, Device and Cosmetic Act.

**(Footnote continued on the next page . . . )**

engaged in selective enforcement of the Vehicle Code, allowing persons whose pre-2004 convictions were not reported to PennDOT by the Clerk to escape a license suspension.

PennDOT responds that the right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article I, Sections 1 and 26 of the Pennsylvania Constitution[7] do not prohibit the

---

**(continued . . . )**

> (II)  A judgment of conviction, adjudication of delinquency or a granting of a consent decree under section 1532(c) (relating to suspension of operating privilege) for a conviction of any offense involving the possession, sale, delivery, offering for sale, holding for sale or giving away of any controlled substance under the laws of the United States, this Commonwealth or any other state.

> (B)  A filing made under this subparagraph shall be valid for the purposes of this title.

75 Pa. C.S. §6323(1)(ii).

[7] Section 1 of the Fourteenth Amendment to the United States Constitution states:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, §1.  Article I, Section 1 of the Pennsylvania Constitution provides:

> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

PA. CONST. art. I, §1.  Article I, Section 26 of the Pennsylvania Constitution provides:

> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

**(Footnote continued on the next page . . . )**

Commonwealth from classifying individuals for different treatment. *Curtis v. Kline*, 666 A.2d 265, 267–68 (Pa. 1995) (citations omitted). The courts have identified three types of classifications: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which fall into neither category;[8] these classifications need only bear a rational relationship to a legitimate government interest. Licensees do not claim that they are part of a suspect class, and they do not specify the offensive classification. The Supreme Court has held that when an "appellee fails to demonstrate what classifications" are at issue "no equal protection analysis is warranted." *Commonwealth v. Barud*, 681 A.2d 162, 166 n.5 (Pa. 1996).

In any case, that there are licensees in York County whose pre-2004 unreported convictions will not be reported to PennDOT does not offend equal protection. In *Life Insurance Company of North America v. Insurance Department*, 402 A.2d 297 (Pa. Cmwlth. 1979), an insurance company argued that its right to equal protection under the law was violated because its competitors were offering a health insurance policy with a pre-existing condition exclusion that

---

**(continued . . . )**

PA. CONST. art. I, §26. Together, the Pennsylvania provisions are understood to establish a right to equal protection of the laws equivalent to that established in the United States Constitution. *Kramer v. Workers' Compensation Appeal Board (Rite-Aid Corp.),* 883 A.2d 518, 532 (Pa. 2005).

[8] Suspect classes are those based on race or national origin, and are reviewed under a standard of strict scrutiny. *Larsen v. Senate of the Commonwealth of Pennsylvania*, 154 F.3d 82, 93 n. 16 (3d Cir.1998). Quasi-suspect classes are gender and legitimacy, which are reviewed under a standard of heightened review. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). Our Supreme Court has used the term "sensitive classification" when referring to quasi-suspect classifications. *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Company)*, 639 A.2d 776, 778 (Pa. 1994).

15

the Insurance Department refused to allow the company to use. The Insurance Department acknowledged this fact, explaining that the competitors' policies were introduced at a time when group accident and health policies were not subject to prior review and approval. This Court held that the "concept of equal protection does not require that the [Insurance Department] attack a problem all at once or not at all." *Id*. at 299.

### d. Estoppel

Licensees argue that the Clerk should be estopped from issuing their notices of conviction to PennDOT because Section 1540(a) of the Vehicle Code requires that "the court or the district attorney shall require the surrender of a driver's license" by a defendant convicted of "any offense which calls for mandatory suspension[.]" 75 Pa. C.S. §1540(a). Licensees contend the Clerk failed to perform his mandatory duty to confiscate their licenses, or require the trial court to confiscate their licenses.

PennDOT responds that equitable estoppel is a doctrine that prevents one from acting contrary to what another has been induced by word or deed to expect. "The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement." *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). Here, Licensees have not identified a PennDOT "inducement" on which they relied. Further, Section 1540(a) of the Vehicle Code requires "the court or the district attorney" to confiscate licenses. It does not require, or even permit, a clerk of courts to confiscate licenses. Moreover, a clerk of courts has no authority to order a trial court to complete any task.

16

### e. Laches

Finally, Licensees assert the doctrine of laches. They assert that PennDOT and the Clerk should be viewed as the same entity and that PennDOT had a duty to inquire or audit the Clerk's office to determine why the DL-21 Forms were not sent in a timely manner.

PennDOT responds that it has no authority to audit the Clerk. Further, laches is an "equitable defense." *Cabell v. City of Hazleton*, 506 A.2d 1001, 1003 (Pa. Cmwlth. 1986). It "bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *Peden v. Gambone Brothers Development Co.*, 798 A.2d 305, 312 (Pa. Cmwlth. 2002).

Licensees are the complaining party in a mandamus action, which is an action at law. Laches is an equitable defense. For Licensees to use laches as a sword in a legal action they initiated is confusing at best.

In any event, Licensees may raise laches in their statutory appeal. In *Lancos v. Department of Transportation, Bureau of Driver Licensing*, 689 A.2d 342 (Pa. Cmwlth. 1997), PennDOT did not implement a suspension for 20 months after this Court denied the licensee's appeal. This Court held that because PennDOT did not act within a reasonable time, the doctrine of laches barred PennDOT's untimely suspension.

### Conclusion

PennDOT and the Clerk present cogent responses to the merits of each of Licensees' legal theories. At a minimum, these responses show that Licensees cannot demonstrate a clear legal right to relief, which is a prerequisite to

a writ of mandamus. However, we need not decide the merits of Licensees' legal claims because we conclude that they should be resolved in their statutory appeals.

Licensees may challenge their suspensions for any reason, including the Clerk's delay in reporting them to PennDOT. Unfortunately for Licensees, the precedent has established that PennDOT cannot be faulted for delays not within its control. Simply because the case law is not in Licensees' favor does not mean they are entitled to more than their statutory appeal. It does mean they do not have a clear right to relief. Mandamus does not lie where the petitioner has another appropriate and adequate remedy, which Licensees have in the statutory appeal. This is the appropriate vehicle by which Licensees can raise all of their constitutional and statutory claims.[9] Licensees' statutory appeal includes appellate review. In sum, the statutory appeal is the vehicle by which they can challenge their license suspensions.

Licensees argue that they seek relief from the Clerk, not PennDOT. The petition for writ of mandamus requests that the Clerk amend the notices of conviction and reissue them to state that prior notices are "void" or, alternatively, that the date of conviction should be considered as the date the suspension commences. Even were the Court to so direct the Clerk, it would be meaningless. PennDOT must suspend licenses upon receipt of the notice of conviction. *See* 75 Pa. C.S. §1532(c) (The Department "shall suspend the operating privilege of any person upon receiving a certified record of the person's conviction…."). Just as PennDOT cannot issue directives to a clerk of court, likewise the Clerk cannot

---

[9] Mandamus is not available for testing the constitutionality of a statute or a regulation. 18 STANDARD PA. PRACTICE 2D, "Mandamus," §99:6.

18

direct PennDOT to revoke suspensions that were previously issued upon notice of Licensees' convictions.

Because Licensees have a statutory remedy and no clear right to relief, the preliminary objections filed by PennDOT and the Clerk are sustained, and the petition for writ of mandamus is dismissed.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stacy M. Smires aka Stacy M. Champ, :
Lanny S. Riffey, Cole M. Viani, :
William T. Albritton, David J. :
Glatfelter, Alfred H. Butler IV, :
Jose Javier Colon, Troy Lee :
Mundis, Michael J. Eisenhart II, :
Frank W. Sanfilippo, Vincent D. :
Martin, Harold Lee Williams, :
Matthew B. Hess, Howard :
Johnson, Christopher L. Gantz, :
Shawn Benedict, Matthew Richard :
Gallatin, Seth Edward Gray, :
Joshua M. Jackson, Jeremy D. :
Williams, Evan M. Zellman, :
Jena Spence, :
                Petitioners :
                 :
          v. : No. 146 M.D. 2015
                 :
Don O'Shell, Clerk of Courts :
of York County, Pennsylvania :
and the Pennsylvania Department :
of Transportation, :
                Respondents :

# **O R D E R**

AND NOW, this 26th day of October, 2015, the preliminary objections filed by Don O'Shell, Clerk of Courts of York County and the Pennsylvania Department of Transportation are SUSTAINED and the Petition for Writ of Mandamus is DISMISSED.

_____
MARY HANNAH LEAVITT, Judge